James L. WILSON, Relator,

v.

**COMMISSIONER OF REVENUE,**
Respondent.

No. C9–02–362.

Supreme Court of Minnesota.

Feb. 20, 2003.

Rehearing Denied April 1, 2003.

Mark A. Pridgeon, Edina, for Relator.

Michael A. Hatch, Minnesota Attorney General, Barry R. Greller, Assistant Attorney General, St. Paul, for Respondent.

OPINION

ANDERSON, RUSSELL A., Justice.

A corporate employee owed over $45,000 to the State of Minnesota in delinquent sales and income taxes. The Commission-

er of Revenue ("Commissioner") served a notice of levy on the corporate employer to collect approximately 25 percent of the employee's biweekly wages in order to partially satisfy the employee's delinquent tax debt. When the corporate employer willfully failed to withhold and remit from the employee's biweekly wages the portion levied upon by the Commissioner, the Commissioner assessed the entire amount of the delinquent tax debt, plus interest, against the corporate employer. When the corporation failed to pay this assessment, the Commissioner assessed the entire amount personally against Relator James A. Wilson ("Wilson"), the corporate officer responsible for withholding and remitting the levied portion of the employee's biweekly wages.

We are asked whether the Commissioner's assessment of liability against Wilson violates the Excessive Fines Clauses of the Eighth Amendment to the United States Constitution and Article I, Section 5 of the Minnesota Constitution. We hold that it does, and we reverse the tax court's decision to the contrary.

In 1994, Jay R. Hanson III ("Hanson"), while working as an independent contractor providing janitorial services to the Apple Valley Oldsmobile ("Valley Oldsmobile") car dealership, failed to pay substantial amounts of sales and income taxes to the Commissioner. On May 12, 1994, the Commissioner served notice of levy on Valley Oldsmobile, requiring it to pay to the Commissioner all money owed to Hanson. The levy for delinquent taxes was authorized by statute and allows the Commissioner to collect from the employer 100 percent of the income owed to an independent contractor. Minn.Stat. § 571.73, subds. 1, 3 (1994).

Because Hanson was delinquent in his payment of sales tax, the Commissioner revoked Hanson's sales tax permit in mid-June 1994, effectively terminating Hanson's ability to work as an independent contractor. Hanson retained Wilson, a former IRS collection agent and freelance tax consultant, who attempted to negotiate a personal payment plan between Hanson and the Commissioner to replace the Commissioner's levy on Hanson's income from Valley Oldsmobile. The negotiations failed, and the Commissioner reminded Wilson that Hanson could not work as an independent contractor because his sales tax permit had been revoked. The Commissioner advised Hanson that the only way he could continue to work legally at Valley Oldsmobile was as an employee.

Wilson was also the owner and president of Hazardous Waste Controls of Bloomington, Inc. ("HWC"). HWC contracted with Valley Oldsmobile to perform janitorial services and hired Hanson as an HWC employee. As an independent contractor, Hanson had been paid $18 per hour by Valley Oldsmobile. Under the new contractual arrangement, HWC paid Hanson a wage of $6 per hour.

Wilson informed the Commissioner that Hanson was now working at Valley Oldsmobile as an employee of HWC. On September 12, 1994, the Commissioner served a notice of levy on HWC that required HWC to withhold and remit to the Commissioner 25 percent of Hanson's biweekly wages from the date of the levy. The Commissioner was authorized to collect from the employer approximately 25 percent of the wages owed to an employee. Minn.Stat. § 571.922(1) (1994). The notice advised HWC that the levy remained in effect unless the Commissioner notified HWC otherwise and required that HWC complete the wage levy disclosure form and return it, with payment, to the Commissioner no later than September 22, 1994. HWC failed to return the wage levy

disclosure form to the Commissioner with payment by September 22, 1994.

On October 4, 1994, the Commissioner reminded HWC by letter that the wage levy disclosure form with payment had not been received and warned HWC that it would be liable for $45,352.55, the total amount of Hanson's delinquent taxes, plus interest. Wilson delivered a check in the amount of $315.08 to the Commissioner on October 12, 1994, but did not include the wage levy disclosure form that the Commissioner required with payment. Because HWC failed to return the wage levy disclosure form, the Commissioner was unable to determine how HWC calculated its payment of $315.08. Wilson claimed that HWC did not receive the initial wage levy notice with the wage levy disclosure form until after the $315.08 payment was made.

On October 19, 1994, Wilson again attempted to negotiate a personal payment plan with the Commissioner on Hanson's behalf. The Commissioner refused to negotiate a personal payment plan and again advised Wilson that Hanson could not perform any taxable services as an independent contractor because his sales-tax permit had been revoked. Hanson continued to work as an employee of HWC until November 30, 1994. Except for the payment of $315.08 delivered October 12,

1994, HWC failed to remit any further payments and failed to return any wage levy disclosure forms to the Commissioner for the duration of Hanson's employment.

By order of November 3, 1994, the Commissioner concluded that HWC had willfully failed to remit the portion of Hanson's biweekly wages as required by the Commissioner's wage levy notice and assessed liability against HWC for $45,352.55. A Minnesota employer is liable for the total amount of an employee's delinquent taxes, together with accrued interest, if, after notice, the employer willfully fails to withhold and remit to the Commissioner a portion of the delinquent tax from the employee's wages. Minn.Stat. § 290.92, subd. 23(3) (1994).[1] On November 4, 1994, one day after assessing liability for Hanson's tax debt against HWC, the Commissioner assessed personal liability against Wilson, HWC's primary corporate officer, for all of Hanson's delinquent taxes, plus penalties and interest. The Commissioner relied upon Minn.Stat. § 270.101, subd. 1, which provides that a person who has the control or responsibility of withholding and remitting taxes to the Commissioner may be personally liable "for the payment of taxes, penalties and interest arising under * * * section[ ] * * * 290.92 * * *." Minn. Stat. § 270.101, subd. 1 (2002).[2]

---

[1]. In 1994, Minnesota Statutes section 290.92, subdivision 23(3) stated, in pertinent part: Should any employer, after notice, willfully fail to withhold in accordance with the notice and this subdivision, or willfully fail to remit any amount withheld as required by this subdivision, the employer shall be liable for the total amount set forth in the notice together with accrued interest which may be collected by any means provided by law relating to taxation. Any amount collected from the employer for failure to withhold or for failure to remit under this subdivision shall be credited to the employee's account in the following manner: penalties, interest, tax, and costs.

Minn.Stat. § 290.92, subd. 23(3) (1994).

[2]. Minnesota Statutes section 270.101, subdivision 1 states:

A person who, either singly or jointly with others, has the control of, supervision of, or responsibility for filing returns or reports, paying taxes, or collecting or withholding and remitting taxes and who fails to do so, or a person who is liable under any other law, is liable for the payment of taxes, penalties, and interest arising under chapters 295, 296A, 297F, 297A, and 297G, or sections 290.92 and 297E.02.

Minn.Stat. § 270.101, subd. 1 (2002).

HWC maintains that, on December 15, 1994, it mailed to the Commissioner its first wage levy disclosure form with a check in the amount of $146.90, and that this payment was in satisfaction of the wage levy on Hanson's wages from November 16 to November 30, 1994. The Commissioner does not acknowledge receipt of either the $146.90 payment or the wage levy disclosure form, but bank records indicate that HWC's checking account was debited in the amount of $146.90 on December 21, 1994. On March 17, 1995, HWC, through its attorneys, sent to the Commissioner five wage levy disclosure forms covering the biweekly pay periods from August 1, 1994 to November 15, 1994. According to HWC's calculations on the five wage levy disclosure forms, HWC paid Hanson a total of $4,855.58 in wages during this period (excluding the wages paid from September 13 through September 30 for which $315.08 was remitted). Wilson calculated the outstanding balance owed to the Commissioner based upon the wage levy disclosure forms and enclosed a check in the amount of $578.81. The Commissioner's office acknowledges receipt of the check in the amount of $578.81, though its records do not indicate whether that specific amount was credited toward the personal assessment against Wilson.

HWC appealed to the tax court from the Commissioner's order of November 3, 1994 assessing liability against it for the total amount of Hanson's delinquent taxes, plus interest. *Hazardous Waste Controls of Bloomington, Inc. v. Comm'r of Revenue*, No. 6589, 1997 WL 158263, at *2 (Minn. T.C. Mar. 17, 1997). The tax court concluded that HWC's failure to withhold and remit 25 percent of Hanson's wages with a wage levy disclosure form was willful and, on March 17, 1997, directed that judgment be entered affirming the assessment. *Id.* HWC did not appeal from or satisfy the judgment.

Wilson subsequently appealed to the tax court from the order assessing liability against him personally, claiming, *inter alia*, that the personal assessment constituted an excessive fine under the United States and Minnesota Constitutions. *Wilson v. Comm'r of Revenue*, No. 6918, 1999 WL 285896, at *1, *3 (Minn. T.C. May 5, 1999). The tax court granted the Commissioner's motion in limine and ruled that Wilson was barred by the doctrine of res judicata from raising the constitutional issues. *Id.* at 4. It found that Wilson was in privity with HWC and could have raised the constitutional issues in HWC's earlier appeal to the tax court. *Id.* at *2–*3. The tax court ultimately concluded that the Commissioner was entitled to summary judgment affirming the personal assessment against Wilson. *Wilson v. Comm'r of Revenue*, No. 6918, 2000 WL 306677, at *1 (Minn. T.C. March 14, 2000).

On appeal, we reversed the tax court's decision, concluding that the tax court did not have jurisdiction in HWC's appeal to determine the constitutional issues because it failed to comply with the procedures required by our decision in *Erie Mining Co. v. Comm'r of Revenue*, 343 N.W.2d 261, 264 (Minn.1984). *Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 199 (Minn. 2000). We held that Wilson's constitutional claims were therefore not barred by res judicata. *Id.*

On remand, the tax court concluded that the Commissioner's personal assessment against Wilson did not violate the Excessive Fines Clauses of the United States and Minnesota Constitutions and entered judgment accordingly. *Wilson v. Comm'r of Revenue*, No. 6918, 2002 WL 58477, at *4 (Minn. T.C. Jan. 8, 2002). This appeal followed.

## I.

 We review tax court decisions to determine: (1) whether the tax court has

jurisdiction; (2) whether the tax court's decision is supported by the evidence and is in conformity with the law; and (3) whether the tax court committed any other error of law. *Skyline Pres. Found. v. County of Polk*, 621 N.W.2d 727, 731 (Minn.2001); Minn.Stat. § 271.10, subd. 1 (2002). We review de novo the tax court's conclusions of law, including its interpretation of statutes. *Burlington N. R.R. v. Comm'r of Revenue*, 606 N.W.2d 54, 57 (Minn.2000). Because states enjoy wide latitude in the establishment of taxation schemes, taxpayers bear a heavy burden when challenging the constitutionality of a state tax statute. *Stelzner v. Comm'r of Revenue*, 621 N.W.2d 736, 740 (Minn.2001).

■ We now turn to the issue of whether the Commissioner's assessment of liability against Wilson for the entire amount of Hanson's delinquent tax debt violates the Excessive Fines Clauses of the United States and Minnesota Constitutions. Because we have not previously considered an Excessive Fines Clause challenge to a civil judgment, this is an issue of first impression for our court.

■ The Excessive Fines Clauses of both the United States and Minnesota Constitutions are identical, each providing: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; Minn. Const. art. I, § 5. When we interpret a clause of our state constitution that is identical to a clause of the federal constitution, a decision of the United States Supreme Court is of inherently persuasive, but not necessarily compelling, force. *State v. Fuller*, 374 N.W.2d 722, 727 (Minn.1985). We look to the Supreme Court for our analysis and begin with the observation that the Eighth Amendment does not limit an excessive fines challenge to criminal proceedings exclusively. *Austin v. United States*, 509 U.S. 602, 607–09, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

In *Austin*, the defendant pleaded guilty in state court in South Dakota to possession of cocaine with intent to distribute. *Id.* at 604, 113 S.Ct. 2801. After entry of the guilty plea, the federal government instituted separate *in rem* civil forfeiture proceedings in federal court against defendant's mobile home, where he kept the cocaine, and against defendant's auto body repair business, where he negotiated the sale of the cocaine. *Id.* at 604–05, 113 S.Ct. 2801. The forfeiture proceedings were instituted under federal law, which provided for the forfeiture of conveyances used to possess controlled substances and all real property used or intended to be used to facilitate the commission of certain controlled substance crimes described in the statute. *Id.* at 604 n. 1, 113 S.Ct. 2801. The federal district court entered summary judgment for the United States, and the Court of Appeals for the Eighth Circuit affirmed. *Id.* at 605–06, 113 S.Ct. 2801. The Supreme Court granted certiorari to resolve the question of the applicability of the Eighth Amendment to *in rem* civil forfeitures and concluded that the forfeiture was subject to the limitations of the Excessive Fines Clause of the Eighth Amendment. *Austin*, 509 U.S. at 604, 113 S.Ct. 2801. The Court remanded to the lower court to determine whether the forfeiture was excessive. *Id.* at 604, 113 S.Ct. 2801.

The *Austin* Court considered the historical purpose behind the Eighth Amendment's Excessive Fines Clause and concluded that its purpose was to prevent the government from abusing its power to punish. *Austin*, 509 U.S. at 606–07, 113 S.Ct. 2801; *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 266–67, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). The *Austin* Court

also interpreted the Excessive Fines Clause as "limit[ing] the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" 509 U.S. at 609–10, 113 S.Ct. 2801 (quoting *Browning–Ferris,* 492 U.S. at 265, 109 S.Ct. 2909) (emphasis in *Austin*). The Court rejected the United States' argument that the Excessive Fines Clause cannot apply to a civil proceeding unless that proceeding imposes sanctions so punitive that safeguards that attend a criminal prosecution are required under the test enunciated in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). In rejecting the *Kennedy* test, the Court explained:

> [T]he United States' reliance on [*Kennedy*] and [[*U.S. v.*] *Ward*[, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)]] is misplaced. The question in those cases was whether a nominally civil penalty should be reclassified as criminal and the safeguards that attend a criminal prosecution should be required. * * * In addressing the separate question whether punishment is being imposed, the Court has not employed the tests articulated in [*Kennedy*] and Ward. * * * Since in this case we deal only with the question whether the Eighth Amendment's Excessive Fines Clause applies, we need not address the application of those tests.

*Austin,* 509 U.S. at 610 n. 6, 113 S.Ct. 2801 (citations omitted). Because the question in this case is similarly limited to the application of the Excessive Fines Clause, we also need not address the *Kennedy* test.

The *Austin* Court further explained that the question in an excessive fines analysis is not whether the government sanction is criminal or civil, but whether it constitutes a "punishment" under the Eighth Amendment. *Austin,* 509 U.S. at 610, 113 S.Ct.

2801. The *Austin* Court acknowledged that "'the notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law.'" *Id.* (quoting *United States v. Halper,* 490 U.S. 435, 447–48, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)). The Court observed that sanctions frequently serve more than one purpose and, citing its decision in *Halper,* concluded that "'a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.'" *Austin,* 509 U.S. at 610, 113 S.Ct. 2801 (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. 1892). We draw from the discussion in *Austin* that a civil sanction, such as the Commissioner's assessment of liability in this case, is a "punishment" that implicates the Excessive Fines Clauses of the United States and Minnesota Constitutions when the sanction cannot fairly be said to serve a solely remedial purpose but rather can only be explained as serving either retribution or deterrent purposes as well.

We question whether a statutory scheme authorizing the Commissioner to assess personal liability against an employer or a corporate officer for the full amount of an employee's delinquent taxes is entirely remedial in nature. Assessing 100 percent of an employee's unpaid taxes against an employer or a corporate officer for failure to remit a fraction of that amount cannot be purely remedial in every situation because, as in this case, the Commissioner stands to receive substantially more from the employer than he is entitled to receive under the wage levy. Hanson worked as a HWC employee from August to November 1994 at a wage of $6 per hour, yet the Commissioner assessed personal liability against Wilson for $45,363.08.

The Commissioner relies on the Supreme Court's decision in *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938). In *Helvering*, the Supreme Court affirmed the penalties assessed against a taxpayer resulting from his understatement of tax liability: "[Civil tax penalties] are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering*, 303 U.S. at 401, 58 S.Ct. 630. At oral argument, the Commissioner also cited *Little v. Comm'r of Internal Revenue*, 106 F.3d 1445, 1446–47 (9th Cir.1997), where the Court of Appeals for the Ninth Circuit affirmed the U.S. Tax Court's assessment of additional penalties after the taxpayer was found to have substantially understated his capital gains.

*Helvering* and *Little* are distinguishable from this case because they involved the government's assessment of amounts beyond the tax liability against the delinquent taxpayers themselves. The treatment as remedial of additional assessments to recoup the costs of investigation and enforcement makes sense when levied against the delinquent taxpayer, but not when levied against a corporate officer for an amount far in excess of that which was owed under the wage levy. We conclude, therefore, that the personal assessment against Wilson for Hanson's delinquent taxes, plus penalties and interest, was not purely remedial.

Furthermore, we conclude that imposition of personal liability on a third party for the full amount of the employee's delinquent taxes, plus penalties and interest, as authorized by sections 290.92, subdivision 23(3) and 270.101, subdivision 1, can only be explained as serving retribution and/or deterrent purposes. Such a significant penalty for willfully failing to comply with a wage levy *must* be calculated to deter employers and corporate officers from disregarding a wage levy notice from the Commissioner. If the possibility that an employer or an individual corporate officer may be held personally liable for the unlimited amount of an employee's delinquent taxes is not sufficient to compel compliance with a wage levy, assessment of that liability provides retribution for willful disregard of the law. It follows that this imposition of a significant financial risk on a third party other than the original delinquent taxpayer can only be explained as also serving retribution and deterrent purposes.

Based on the definition of "punishment" found in *Austin*, we conclude that the Commissioner's personal assessment against Wilson for the total amount of Hanson's delinquent taxes, plus penalties and interest, based on HWC's failure to honor a wage levy that amounts to a small fraction of the personal assessment, cannot be said to serve a solely remedial purpose but rather can be explained only as also serving retribution and deterrent purposes and therefore constitutes a "punishment" subject to the Excessive Fines Clauses of the United States and Minnesota Constitutions.

## II.

■ Having concluded that the Commissioner's assessment of liability against Wilson constitutes a "punishment," we now address the question of whether it is excessive under the Eighth Amendment to the United States Constitution and Article I, Section 5 of the Minnesota Constitution. Our inquiry into whether the Commissioner's assessment is excessive focuses on the principle of proportionality—that is, does the assessment "bear some relationship to the gravity of the offense that it is designed to punish?" *United States v. Baja-*

*kajian,* 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). Our recent decision in *State v. Rewitzer,* 617 N.W.2d 407 (Minn.2000), guides our analysis of the principle of proportionality in this case.

In *Rewitzer,* the defendant pleaded guilty to selling marijuana and mushrooms containing psilocyn to a police informant on three different occasions. 617 N.W.2d at 409. The trial court sentenced Rewitzer to 48 months in prison and imposed fines and surcharges totaling $273,600. *Id.* In arriving at this amount, the trial court imposed fines of approximately 30 percent of the maximum amount allowed for controlled-substance offenses in the fifth, third, and second degrees. *Id.* at 410.[3] Rewitzer brought a postconviction petition seeking to reduce the amount of the fines, which the trial court denied. *Id.* at 410–11. Rewitzer appealed, asserting that the fines violated the Excessive Fines Clauses of the federal and state constitutions. *Id.* at 411. The court of appeals affirmed the trial court's sentence and held that the fines were within the discretion of the trial court and not excessive. *State v. Rewitzer,* 1999 WL 1216598, at *2 (Minn.App. Dec.21, 1999). We granted review and looked to the Supreme Court's decision in *Bajakajian* for instruction in applying the federal standard to our excessive fines analysis. *Rewitzer,* 617 N.W.2d at 413.

■ In addition to the "gross disproportionality" standard found in *Bajakajian,* we also adopted the three-part test first articulated in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to assess the proportionality of a contested fine. *Rewitzer,* 617 N.W.2d at 414. We considered Rewitzer's fines under the following *Solem* factors: (1) comparison of the gravity of the offense with the harshness of the penalty; (2) comparison of the contested fine with fines imposed for the commission of other offenses in the same jurisdiction; and (3) comparison of the contested fine with fines imposed for commission of the same offense in other jurisdictions. *Rewitzer,* 617 N.W.2d at 414. Because we applied the *Solem* factors in *Rewitzer* to determine proportionality, we do the same in this case.

First, we compare the gravity of the offense with the harshness of the penalty. We believe that the overall facts in this case serve to limit the gravity of Wilson's offense. First, neither Wilson nor HWC participated in the creation of the underlying tax liability. Hanson was, and still is, the delinquent taxpayer. Second, in negotiations with Wilson and Hanson, the Commissioner told Hanson that the only way he could continue to work after his sales tax permit had been revoked was as an employee. Hanson thus complied with the Commissioner's directions when he agreed to work at Valley Oldsmobile as a HWC employee. Third, the Commissioner is precluded from claiming that HWC's actions deprived the state of money it would have collected under the original Valley Oldsmobile third-party levy. It would have been illegal for Hanson to continue working as an independent contractor for Valley Oldsmobile under the existing third-party levy because his sales tax permit had been revoked. Had Hanson agreed to work as an employee of Valley Oldsmobile instead of HWC, the Commissioner still would have been entitled to only 25 percent of Hanson's wages. The Commissioner's revocation of Hanson's sales tax permit effectively limited Hanson's options;

---

**3.** Minnesota Statutes section 609.101, subdivision 3(a) states: "[n]otwithstanding any other law, when a court sentences a person convicted of a controlled substance crime * * *, it must impose a fine of not less than 30 percent of the maximum fine authorized by law * * *." Minn.Stat. § 609.101, subd. 3(a) (2002).

he could work as an employee or not at all. We conclude that the limited gravity of Wilson's conduct does not support the harshness of the personal assessment against Wilson.

Turning to the second *Solem* factor, we compare the sanction authorized by section 290.92, subdivision 23(3) with similar wage levy sanctions in Minnesota. In 1994, section 290.92, subdivision 23(3) was the only statute specifically assessing personal liability against an employer. Another statute, section 270.70, subdivision 8, authorized the Commissioner to assess personal liability against any person who failed, without reasonable cause, to surrender property or rights to property subject to a levy, with the amount of the personal assessment limited to the value of the property not surrendered. Minn.Stat. § 270.70, subd. 8 (1994). Section 270.70, subdivision 9 allowed the Commissioner to impose an additional penalty equal to 25 percent of the amount recoverable under section 270.70, subdivision 8. Minn.Stat. § 270.70, subd. 9 (1994).

In 1995, one year after this dispute, the legislature amended section 290.92, subdivision 23(3) and deleted the language regarding an employer's personal liability for willfully failing to withhold and remit to the Commissioner an amount required by a wage levy notice. Act of June 1, 1995, ch. 264, art. 13, § 13, 1995 Minn. Laws 2872, 3055–56. As amended, section 290.92 subdivision 23(7) provides that a wage levy imposed under subdivision 23 has the same legal effect as a levy under section 270.70, making the subdivision 23 remedy subject to the collection provisions applicable to a section 270.70 levy. Minn. Stat. § 290.92, subd. 23(7) (Supp. 1995). At the same time, the legislature repealed section 270.70, subdivisions 8–10, and enacted section 270.7002. Act of June 1, 1995, ch. 264, art. 13, §§ 4, 23, 1995 Minn.

Laws 2872, 3050, 3060. Section 270.7002 currently covers all personal liability for failing to honor a wage levy in Minnesota, including that of employers. It permits the Commissioner to assess liability against a person who fails to honor a levy "in an amount equal to the value of the property or rights not surrendered, or the amount of taxes, penalties, and interest for the collection of which the levy was made, whichever is less." Minn.Stat. § 270.7002, subd. 1 (2002). Section 270.7002, subdivision 2 allows for a penalty equal to 25 percent of the value of the levy if a person fails to honor the levy "without reasonable cause." Minn.Stat. § 270.7002, subd. 2 (2002).

Thus, in 1994, a provision similar to section 290.92, subdivision 23(3) limited the liability to the amount subject to the levy and authorized an additional penalty equal to 25 percent of only the liability amount. The provision at issue here, as applied to the facts of this case, clearly provides for significantly greater personal liability than the comparable 1994 provision in section 270.70 and the now-applicable provision in section 270.7002. Although section 290.92, subdivision 23(3) required willful behavior, which presumably is a higher standard of culpability than the "without reasonable cause" standard of sections 270.70 and 270.7002, that distinction is not enough to justify the disparity in liability imposed.

The third *Solem* factor invites us to compare the personal assessment with fines imposed for the commission of the same offense in other jurisdictions. In order to arrive at a more complete comparison, we examine similar wage levy fines from both federal and state jurisdictions.

In Wisconsin, a person's failure to honor a levy results in personal liability equal to the amount of the levied property not surrendered (including unpaid taxes), plus in-

terest at the rate of 18 percent per year from the date of the levy. Wis. Stat. § 71.91(6)(d)1 (2001). If failure to honor the levy is found to be "without reasonable cause," Wisconsin allows a penalty equal to 50 percent of the amount of the levy. Wis. Stat. § 71.91(6)(d)2 (2001). Section 6332(d) of the Internal Revenue Code also authorizes personal liability for failure to honor a tax wage levy, including costs and interest from the due date of the levy. 26 U.S.C. § 6332(d)(1) (2002). Like Wisconsin, federal law assesses a penalty equal to 50 percent of the value of the levy if failure to pay is "without reasonable cause." 26 U.S.C. § 6332(d)(2) (2002). We note that neither Wisconsin Statutes nor the Internal Revenue Code potentially holds an employer or a corporate officer personally liable for the entire amount of an employee's delinquent taxes plus penalties and interest.

Based on our analysis of the three *Solem* factors adopted in *Rewitzer*, we conclude that the personal assessment against Wilson violates the Excessive Fines Clauses of the United States Constitution and Art. 1, Sec. 5 of the Minnesota Constitution. The amount of the penalty assessed by the Commissioner against Wilson is grossly disproportional to the amount due under the wage levy. Accordingly, we reverse the tax court's judgment and hold that the Commissioner's personal assessment of liability against Wilson is an unconstitutional excessive fine.

### III.

Having decided that, in the circumstances of this case, imposition of personal liability against Wilson for the full amount of the taxpayer's unpaid taxes plus interest and penalties violates the Excessive Fines Clauses, we are left to determine what, if any, liability can be assessed. Section 290.92, subdivision 23(3) imposed liability

for the total amount of the levy notice, which we have concluded cannot constitutionally be assessed here. We are reluctant to rewrite that now-repealed provision to impose a lesser amount of our choosing that passes constitutional muster.

Fortunately, however, we are not left with a blank slate. As discussed above, at the time of the personal assessment in this case, another statute provided personal liability for failure to surrender property subject to a tax levy without reasonable cause. That statute imposed liability for the amount of the property not surrendered and authorized a penalty equal to 25 percent of the liability amount. Minn.Stat. § 270.70, subds. 8–9 (1994). Moreover, we observe that the current statute imposing liability and penalty for failure to comply with a tax levy, adopted just a year after the assessment in this case, similarly imposes liability equal to the amount of the property not surrendered and imposes a penalty equal to 25 percent of that amount. Minn.Stat. § 270.7002, subds. 1–2 (2002).

 These statutes provide a basis for determining a proper assessment consistent with demonstrated legislative intent where application of section 290.92, subdivision 23(3) is constitutionally impermissible. Accordingly, the personal liability imposed on Wilson under Minn.Stat. § 270.101, subd. 1, shall be determined in accordance with section 270.70, subdivisions 8 and 9. Wilson is liable for 25 percent of Hanson's wages from August 1 to November 30, 1994, as required by the wage levy, together with interest accrued at the statutory rate on the unpaid balance, if any, beginning on December 1, 1994. Any amount previously paid from Wilson to the Commissioner shall be credited toward the amount due under the levy. Additionally, Wilson is liable for 25 percent of the total amount due under the levy as a penalty for failing to withhold

and remit 25 percent of Hanson's wages to the Commissioner without reasonable cause. The record before us is not sufficient to enable us to calculate the actual amounts due. We therefore remand to the tax court for entry of judgment calculated in accordance with this opinion, with the hope that the parties will agree upon the proper amount without further extending this already lengthy litigation.

Reversed and remanded.