**Estelle BUSCH, Relator,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

No. A05–656.

Supreme Court of Minnesota.

May 11, 2006.

Estelle Busch, Minneapolis, MN, pro.se.

Mike Hatch, Minnesota Attorney General, Craig R. Anderson, Assistant Attorney General, St. Paul, MN, for Respondent.

## OPINION

ANDERSON, PAUL H., Justice.

Relator Estelle Busch's Minnesota individual income tax returns for 1999, 2000, and 2001 were audited by the Commissioner of Revenue and as a result Busch was assessed $102,245 in additional taxes, plus interest, under the Minnesota Alternative Minimum Tax. The additional assessment was based on Busch's gambling activity. Busch played slot machines extensively, winning substantial amounts of money, but losing more money than she won. Under the Minnesota Alternative Minimum Tax, a taxpayer cannot deduct gambling losses unless they are incurred as part of the taxpayer's trade or business. Minn.Stat. § 290.091, subd. 2 (2004). The commissioner concluded that Busch was not engaged in the trade or business of gambling and therefore disallowed her gambling loss deductions. Busch appealed, and the Minnesota Tax Court affirmed the commissioner's determination that Busch's gambling did not constitute a trade or business, and that the commissioner's review was not barred by a possible IRS determination. Busch, who represented herself in these legal proceedings, appealed the tax court's judgment. We reverse.

The parties agreed at the tax court hearing that the facts of this case are essentially undisputed. Busch held sever-

al jobs before 1998, including administrative assistant, teacher, police dispatcher, landlord, and building renovator. She did not gamble until 1998. Upon reaching 65 years of age in 1999 and quitting her previous occupations,[1] Busch began to spend a considerable amount of time playing the slot machines at Mystic Lake Casino. By the year 2001 she was spending between 40 to 60 hours every week playing the slot machines. Busch testified that she had read several articles "on the computer" regarding slot machine play and talked to Mystic Lake employees and customers about which slot machines were "rolling" favorably to the gamblers.[2] Additionally, Busch kept detailed records of her gambling winnings and losses. However, Busch admitted she was not an expert on how slot machines worked and that she chose slot machines as a method of gambling because "it didn't take a great deal of knowledge to play a slot machine." Busch told the tax court that, for her, gambling was not entertainment, but "just plain hard work."

It is undisputed that Busch sought to gain a profit at the slot machines and that

she believed she was good at telling whether a slot machine was rolling favorably to the player. Her winnings each year were substantial—$79,482 in 1999, $430,280 in 2000, and $972,980 in 2001, but she asserted and the tax court found that her losses always at least equaled her gains—she claimed $79,482 in losses in 1999, $430,280 in 2000, and $1,161,824 in 2001. Busch initially deducted her 1999 and 2000 gambling losses as Schedule A itemized deductions on her federal tax returns. In 2001, Busch claimed her gambling losses as a deduction on Schedule C, which is the form used for trade or business deductions.[3] She then amended her 2000 return to claim her gambling losses on Schedule C.

On August 14, 2002, the Minnesota Department of Revenue notified Busch that the department had audited her 1999 tax return and had assessed an additional tax under Minnesota's Alternative Minimum Tax (AMT). The additional tax was assessed because gambling losses may not be deducted from gambling winnings under the Minnesota AMT unless the losses are

**1.** Busch refers to herself as having retired in 1998 "in one sense," but contends that this was not actual retirement because she began professionally gambling at that time.

**2.** "Rolling" refers to the "roll" of the columns on the slot machine. According to Busch, slot machine players look for patterns and tendencies in the "roll" of the columns of given machines and attempt to predict which machines will pay out more jackpots on this basis. In her testimony, Busch pointed to her many jackpots as evidence that she had insight into which machines would pay out. However, slot machines play on these emotions. *See* Alan Krigman, *If Pavlov Played the Slots, He Wouldn't Have Needed a Dog*, Casino City Times (April 12, 2004), at 2. For instance, the idea that a machine is rolling more favorably may be based on the number of times a machine almost wins. But almost wins are a powerful reinforcement function of slot machines which encourage gamblers, as

noted in Kligman's article. *Id.* at 2. "Numerous small wins are augmented in maintaining behavior by secondary conditioning mechanisms, especially during periods when little or no return is obtained. In slot machines, the most important of these is the relative frequency at which players think they 'almost' win." *Id.* Another tactic is to show "high value" jackpot symbols on the display, but not on the payout line. *Id.* at 3.

Busch's testimony is an example of slot machine psychology in action: despite losing substantial amounts of money every year on the slot machines, she testified that she believed she had a knack for predicting payouts and believed that she could make money on the slot machines.

**3.** Busch claims that she was "advised" by the Internal Revenue Service to deduct her 2001 losses on a Schedule C. There is no record of such advice from the IRS.

incurred in the course of a trade or business. Minn.Stat. § 290.091, subd. 2. The result of the audit was that Minnesota taxed Busch on her 1999 gambling winnings without any deduction for gambling losses, despite the fact that she had lost more money than she had won. In December 2002, the revenue department notified Busch that it also had audited her 2000 and 2001 returns, and was similarly assessing additional Minnesota AMT taxes on Busch's gambling winnings for those years. Altogether, Busch was assessed $102,245 in additional taxes, plus interest. Busch appealed the tax assessments to the Commissioner of Revenue (the commissioner).

Meanwhile, in August 2004, the Internal Revenue Service (IRS) conducted an audit of Busch's 2001 federal income tax return wherein one of the IRS's specific enumerated questions for Busch was: "It appears you are treating your gambling activity as a business. If so, what are your reasons for treating this as a business?" As a result of this audit, the IRS made minor adjustments to Busch's 2001 tax return, but did not move Busch's gambling losses from Schedule C to Schedule A or otherwise comment on the losses.

In response to Busch's administrative appeal of the department's audit, the commissioner examined Busch's returns, reviewed her arguments, and concluded that Busch's gambling did not constitute a trade or business. Busch then appealed the commissioner's decision to the Minnesota Tax Court. Following a hearing, the tax court concluded that Busch had not overcome the presumptive validity of the commissioner's determination and affirmed the commissioner's audit assessment. *Busch v. Comm'r of Revenue*, No. 7590–R

(Minn. T.C. March 2, 2005) (slip op. at 9). The court noted that Busch's slot machine play involved no skill or research and was entirely dependent on chance. *Id.* The court also noted that Busch admitted she was not a slot machine expert and that her "personal situation" suggested that she was not trying to earn a living from gambling. *Id.* As such, the court concluded that Busch's gambling activity was more of a hobby than a trade or business. *Id.* at 8. The court further stated that "the expectation of making a profit must be a realistic one" for the activity to qualify as a trade or business. *Id.* at 9. Busch petitioned our court for review, and we issued a writ of certiorari.

## I.

■ Busch first claims that the IRS has already ruled that it was acceptable for her to deduct her gambling losses as trade or business deductions and that the commissioner may not contradict the IRS's ruling. Busch points out that during the IRS's audit of her 2001 federal income tax return, the IRS asked if she was treating her gambling activity as a business, and if so, to identify her reasons for such treatment. Busch argues that this inquiry indicates that the IRS specifically examined Busch's claim that gambling was her trade or business, and that the IRS's failure to contest that claim or move her gambling loss deductions from Schedule C to Schedule A means that the IRS concluded that she was in fact engaged in the trade or business of gambling.[4] While Busch does not specifically identify it as such, Busch's argument appears to be a collateral estoppel argument.

---

4. Busch also claims that the IRS "approved" her placement of gambling losses on a Schedule C form on her 2000 (amended) and 2001 returns. It appears, however, that the IRS sent a letter acknowledging her amendments to those tax returns.

When parties have agreed to the underlying facts, we need consider only whether the law was applied properly. *See Mayo Collaborative Services, Inc. v. Comm'r of Revenue,* 698 N.W.2d 408, 412 (Minn.2005). Here, the parties disagreed whether Busch was engaged in a trade or business, but agreed as to the essential underlying facts; thus, our review is de novo. We have held that collateral estoppel applies when the particular tax matter has been previously adjudicated by a federal court. *Tarutis v. Comm'r of Revenue,* 393 N.W.2d 667, 669 (Minn.1986). For collateral estoppel to apply, the following four factors must be fulfilled: (1) the issue must be identical to one in a prior adjudication; (2) in the prior adjudication, there must have been a final judgment on the merits; (3) the estopped party must have been a party or in privity with a party to the prior adjudication; and (4) the estopped party must have been given a full and fair opportunity to be heard on the adjudicated issue. *Id.*

We have said that when the IRS has failed to adjust or correct a taxpayer's federal return, collateral estoppel does not apply because there was no prior adjudication and the commissioner was neither a party nor privy and therefore has no opportunity to be heard. *Id.* Moreover, in *Weed v. Comm'r of Revenue,* we stated that even if the IRS had made a determination of a taxpayer's federal taxable income, the commissioner was not foreclosed from adjusting the taxpayer's state taxable income. 550 N.W.2d 285, 289 (Minn.1996). Even when Minnesota tax law incorporates the federal law, the commissioner is not necessarily bound by the IRS's determinations. *See id.; see also Specktor v.*

*Comm'r of Revenue,* 308 N.W.2d 806, 809 (Minn.1981). In *Specktor,* we noted that in Minnesota the commissioner has the authority to examine tax returns and order adjustments of individual taxes, which authority would have no meaning if the IRS's action or lack thereof were always to govern the outcome.[5] *Id.*

Busch seeks to support her position by citing several Minnesota Tax Court cases that hold that, when a taxpayer has, after an audit, come to a settlement with the IRS regarding the amount of the taxpayer's gross income for the audited year, the taxpayer cannot contest that gross income figure when it is used to compute the taxpayer's Minnesota liability. *DeBoer v. Comm'r of Revenue,* No. 6712, 1997 WL 675466, at *3 (Minn. T.C. Oct. 27, 1997); *Yocum v. Comm'r of Revenue,* No. 5697, 1992 WL 15465, at *2 (Minn. T.C. Jan. 22, 1992). Though decisions of the tax court may be persuasive, they are not binding on our court. *A & H Vending Co. v. Comm'r of Revenue,* 608 N.W.2d 544, 546 (Minn. 2000). Moreover, the cases cited by Busch deal with a different circumstance. For example, in *DeBoer* and *Yocum,* the taxpayers were audited by the IRS and consented in writing to a higher gross income than they originally claimed. *DeBoer,* 1997 WL 675466, at *3; *Yocum,* 1992 WL 15465, at *2. Then the commissioner used these federal gross incomes to determine the taxpayers' state income tax liability. *Id.* In such cases, collateral estoppel is more applicable because the commissioner is trying to hold the taxpayer to an agreement to which the taxpayer was a party. Here, Busch is attempting to hold the commissioner to a determination to which the commissioner was not a party.[6] Be-

---

**5.** The court in *Specktor* cited a statute regarding the commissioner's powers which has since been repealed. *Specktor,* 308 N.W.2d at 808. The commissioner's power to review returns is now noted in Minn.Stat. § 289A.35 (2004).

**6.** We also note that, for the taxation purposes of the federal government in this case, wheth-

cause the line of cases cited by Busch deals with a circumstance wherein the income that the commissioner calculated for Minnesota tax purposes was the same as the taxable income the taxpayer had already expressly agreed to for federal income tax purposes, we conclude that the cases are inapplicable.

We also conclude that when the issue of Busch's Minnesota tax liability came before the tax court, there had been no final adjudication of whether Busch's gambling activity constituted a trade or business. The arguable IRS determination that Busch's gambling constituted a trade or business was not the result of fairly contested litigation in court or any inquiry where the commissioner was included as a party. Therefore, collateral estoppel does not apply. We hold that under the facts of this case and our prior case law, the commissioner has the right to make an independent assessment of Busch's state tax liability regardless of any IRS determination as to the status of Busch's gambling activities as a trade or business.

## II.

■ We must now determine whether Busch is correct in her claim that her gambling activity constituted a trade or business and therefore she should be allowed to deduct her gambling losses to the extent of her winnings for purposes of calculating her Minnesota AMT. But before doing so, we must determine the correct standard of review for the tax court's decision under the AMT. As mentioned above, when parties agree to certain underlying facts, we need consider only whether the law was applied properly, and therefore our review is de novo. *See Mayo Collaborative Servs., Inc.,* 698

N.W.2d at 412. Here, the parties agreed at trial that the facts were undisputed and the only question before the court was the application of the law to the facts. There is no fact question here as to the nature and purpose of Busch's gambling activities. Therefore, the question before us is what the law is and how it is to be applied to the undisputed facts. Accordingly, we review the tax court's decision de novo.

The Minnesota AMT, like the federal AMT, was created to reduce the ability of certain wealthy individuals to avoid payment of individual income tax by using the numerous tax deductions or exemptions available under the regular tax formula. Minnesota House of Representatives Research, *The Minnesota Individual Alternative Minimum Tax* (July 2005). Minnesota Statutes § 290.091 (1978) contains the rules for the Minnesota AMT. The AMT is an alternative tax formula, which limits deductions and exemptions. *See* Minn. Stat. § 290.091 (2004). A Minnesota taxpayer is required to compute the amount of his or her Minnesota income tax each year under both the regular Minnesota formula and the AMT formula, pay the tax due under the regular formula, then pay an additional tax in the amount of the tax calculated under the AMT minus the regular tax. *See* Minn.Stat. § 290.091, subd. 1.

Under both the Minnesota and federal regular tax formulas, taxpayers may claim an itemized deduction for gambling losses to the extent of their winnings. *See* Minn. Stat. § 290.01, subd. 19; 26 U.S.C. § 165(d) (2000). For the purpose of computing federal alternative minimum taxable income, the taxpayer may still take this deduction. 26 U.S.C. §§ 55(b), 56, 67(b), 165(d) (2000). But under Minnesota law, except in limited circumstances, a tax-

---

er Busch's gambling constituted a business is not very important. As will be discussed in section II, under both the regular federal tax

formulas and the federal AMT, gambling losses are deductible to the extent of winnings. 26 U.S.C. §§ 62, 55, 165(d) (2000).

payer may not deduct gambling losses when computing his or her Minnesota AMT. *See* Minn.Stat. § 290.091, subd. 2.[7] Therefore, in calculating the Minnesota AMT, a taxpayer's gambling winnings are included in taxable income, but the taxpayer cannot deduct gambling losses.

The exception to the rule that a taxpayer may not deduct gambling losses under the Minnesota AMT is the trade or business deduction. *See* Minn.Stat. § 290.091, subd. 2 (beginning the calculation of Minnesota alternative minimum taxable income with the taxpayer's federal alternative minimum taxable income); 26 U.S.C. § 62.[8] The Minnesota AMT, while disallowing certain itemized deductions allowed by the federal AMT, still allows trade or business expenses to be deducted from taxable income. *See id.* Therefore, if a person is engaged in the trade or business of gambling, he or she would be able to deduct his or her gambling losses from adjusted gross income as trade or business expenses for the purposes of both the federal and Minnesota AMT.[9]

There are two ways to view Busch's gambling activities for taxation purposes. Under one theory, Busch was a serious gambler who believed she would make a profit and sought to do so, and therefore she should receive a trade or business deduction as does anyone else who is engaged in a trade or business. Under the second theory, Busch worked until retirement, then began gambling, which she enjoyed as entertainment. Under this second theory, Busch did not "lose" money; rather, she won a considerable sum and then *spent* it on entertainment. This type of loss is known as a "hobby loss." *See* Michelle B. O'Connor, *The Primary Profit Objective Test: An Unworkable Standard?*, 27 Loy.U.Chi.L.J. 491, 498–99 (Spring 1996). Hobby losses often arise from activities that appear on some level to be a "trade or business," but are actually a sporadic activity, hobby, or entertainment that does not qualify as a trade or business for tax purposes. *See, e.g., Brook, Inc. v. Comm'r*, 799 F.2d 833, 839 (2nd Cir.1986) (holding that club's deduction of losses it suffered in providing food to nonmembers was not authorized as the sales were not engaged in for a profit); *Ruben v. Comm'r*, No. 87–7079, 1988 WL 79313, at *1 (9th Cir., April 4, 1988) (concluding that appellant's horse ranching operations were not a trade or business). The question before us is whether Busch's losses from her gambling activity should be treated as

---

7. Minnesota incorporates the federal AMT calculation method, but changes it somewhat. Minn.Stat. § 290.091, subd 2. Minnesota starts by stating that to calculate the Minnesota AMT, the taxpayer first calculates his federal alternative minimum taxable income, then adds back the itemized deductions the federal AMT authorizes except for a few specifically enumerated itemized deductions. *Id.* at (1)-(2). The effect of this approach is to use the federal AMT laws for calculating the gross income subject to the Minnesota AMT, but to apply Minnesota's own curtailed list of itemized deductions instead of the broader federal list. Minnesota retains the federal government's nonitemized deductions, such as the trade or business deduction. *See id.*

8. Trade or business deductions are "above the line" deductions, not itemized deductions. *See* 26 U.S.C. § 62(a). As such, they are not part of the federal itemized deductions that are "added back" to the federal alternative minimum taxable income in calculating the Minnesota alternative minimum taxable income. *See* Minn.Stat. § 290.091, subd. 2(a).

9. Federal courts have held that gambling losses, even if incurred in the trade or business of gambling, may be deducted only to the extent of gambling winnings. *See, e.g., Boyd v. United States*, 762 F.2d 1369, 1372–73 (9th Cir. 1985). Busch has not claimed that her gambling losses over and above the amount of her winnings may be deducted, so that issue is not before us in this case.

trade or business losses or as "hobby losses."

Busch claims that she is entitled to take her gambling losses as a trade or business deduction, asserting that she considered playing the slot machines to be her "work." She points to the up to 40 to 60 hours per week that she spent at a casino over a three-year period. While conceding that her expectation of earning a profit might have been unreasonable, Busch claims she had such an expectation and that this expectation, in addition to the regularity of her slot machine play and her research into slot machine strategy, shows that she was engaged in gambling as a trade or business.

The commissioner contends that some forms of gambling can constitute a trade or business, but Busch's gambling did not because it involved no skill and making any money via gambling on the slot machines is entirely a matter of chance.[10] The commissioner's audit order stated that:

> A Professional Gambler is one who has attained a certain level of skill in a gaming activity whereby he or she makes their living off of the net winnings in the business. Professional gamblers exist only in activities where skill is a factor in winning, not only the luck of the game. Such activities include black jack, poker (where legal), and thoroughbred horse racing. On the other hand, games such as bingo, pull-tabs, scratch-offs and slot machines are simply games of chance with no skill factor to provide higher odds of winning.

The commissioner concluded that Busch's "entire gambling winnings and losses were incurred by playing the slot machines, therefore the activity would not qualify as a business." The commissioner did go on to comment on other factors, however, such as that Busch spent three years gambling without making a profit, and that she spent her savings and retirement funds on gambling. On appeal, the commissioner also noted that Busch could not remember any specific written materials she had studied on slot machine play and that she admitted to having no particular expertise regarding slot machines. Additionally, the commissioner noted that Busch never supported herself on her winnings. The commissioner asserts that these factors indicate that for Busch, gambling was a "form of entertainment" that she enjoyed and began to engage in only after she had retired.

As yet, we have not squarely addressed the question of whether gambling may constitute a trade or business under Minnesota tax laws. But the United States Supreme Court, in the case of *Commissioner of Internal Revenue v. Groetzinger*, addressed the question of whether and when gambling may constitute a trade or business under federal tax law. 480 U.S. 23, 107 S.Ct. 980, 94 L.Ed.2d 25 (1986). Additionally, in its regulations, the IRS has set forth a number of nonexclusive factors to be considered when making a determination whether a taxpayer's ac-

---

**10.** Federal cases have not dismissed slot machine gambling out of hand as incapable of being a trade or business, though we can find no cases wherein a taxpayer was actually found to have engaged in the trade or business of slot machine gambling and the cases which have involved slot machine gambling are unpublished. *Cf. Panages v. Comm'r*, No. 16154–03S, T.C. Summ. Op.2005–3, 2005 WL 15138 (U.S.Tax Ct. Jan.4, 2005) (finding that a taxpayer who gambled after work was not in the trade or business of gambling); *Neymeyer v. Comm'r*, No. 12161–00S, T.C. Summ. Op.2002–120, 2002 WL 31163665 (U.S.Tax Ct. Sept.18, 2002) (finding that a taxpayer who gambled infrequently was not in the trade or business of gambling).

tivity is a trade or business. *See* Treas. Reg. § 1.183–2(b) (1972).

In our analysis, we will first consider the relevancy of the Supreme Court's holding in *Groetzinger* and the IRS factors in determining whether Busch's gambling activity constitutes a trade or business. We will then consider the commissioner's and the tax court's conclusions that a taxpayer must have a reasonable expectation of profit from a given activity in order for the activity to qualify as a trade or business.

### A. *Commissioner v. Groetzinger*

In *Groetzinger,* the Supreme Court was asked to determine whether Groetzinger's gambling activity constituted a trade or business under the federal tax code. *Groetzinger,* 480 U.S. at 24, 107 S.Ct. 980. Because *Groetzinger* applies to the federal tax code and this case concerns the Minnesota tax code, *Groetzinger* does not control our decision. But *Groetzinger* is still persuasive authority, particularly because the Minnesota tax code incorporates sections of the federal tax code, including the trade or business sections. Minn.Stat. § 290.01, subd. 19 (2004) (defining Minnesota net income as the federal taxable income, with specified exceptions); 26 U.S.C. § 62, 162 (providing that trade or business expenses are allowed as a deduction to federal adjusted gross income); *see Wilson v. Comm'r of Revenue,* 656 N.W.2d 547, 552 (Minn.2003) ("When we interpret a clause of our state constitution that is identical to a clause of the federal constitution, a decision of the United States Supreme Court is of inherently persuasive, but not necessarily compelling, force."). Therefore, we will consider the Court's reasoning in *Groetzinger.*

In *Groetzinger,* the taxpayer, Groetzinger, after losing his job, had begun betting on greyhound dog races full time. 480 U.S. at 24, 107 S.Ct. 980. Groetzinger went to the racetrack six days a week, spending approximately 60–80 hours per week at the racetrack. *Id.* He had no other employment, regularly studied racing forms, programs, and other materials, and kept a detailed accounting of his wins and losses. *Id.* at 24–25, 107 S.Ct. 980. But despite all this effort, Groetzinger lost more than he won. *Id.* at 25, 107 S.Ct. 980. Under the law at that time, Groetzinger was subject to the federal AMT and his losses were not deductible unless they were incurred as part of a trade or business. *Id.* The United States Tax Court held that Groetzinger's gambling activity qualified as a trade or business, and the Seventh Circuit Court of Appeals affirmed the Tax Court's decision. *Id.* at 26, 107 S.Ct. 980.

On appeal, the Supreme Court affirmed, holding that gambling can constitute a trade or business, even if the gambler/taxpayer does not make a profit. *See id.* at 33, 107 S.Ct. 980. The Court stated that if a person "devotes his full-time activity to gambling, and it is his intended livelihood source, it would seem that basic concepts of fairness * * * demand that his activity be regarded as a trade or business." *Id.* The Court then went on to say that resolution of the issue of whether the taxpayer is gambling as a trade or business "requires an examination of the facts in each case." *Id.* at 36, 107 S.Ct. 980 (quoting *Higgins v. Comm'r,* 312 U.S. 212, 217, 61 S.Ct. 475, 85 L.Ed. 783 (1941)). The Court stated that "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify." *Id.* at 35, 107 S.Ct. 980. Finally, the Court concluded that Groetzinger had met the trade or business standard. The Court said:

[I]f one's gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business within the meaning of the statutes with which we are here concerned. Respondent Groetzinger satisfied that test in 1978. Constant and large-scale effort on his part was made. Skill was required and was applied. He did what he did for a livelihood, though with a less-than-successful result. This was not a hobby or a passing fancy or an occasional bet for amusement.

*Id.* at 35–36, 107 S.Ct. 980.

The main factors considered by the Supreme Court in *Groetzinger* were the regularity of Groetzinger's gambling, the effort he exerted, the skill that he applied, and his intent to produce a livelihood via gambling. *See id.* While Busch's slot machine gambling involved no provable skill, she did gamble 40–60 hours per week, which is with as much or more regularity than traditional employment requires. She also kept scrupulous records and read articles "on the computer" regarding the use of slot machines. Finally, her intent to make a profit via her gambling activity was acknowledged by the commissioner at the tax court hearing. In *Groetzinger,* the Court gave much weight to the time and effort distinction; the Court appears to have considered a hobby as something one is involved in part time or as a side activity. Under the *Groetzinger* factors, Busch's gambling appears to qualify as a trade or business as she gambled full time, made attempts to improve her "skill" at

using slot machines and to apply that skill, kept detailed, businesslike records of her winnings and losses, and engaged in the gambling activity intending to gain a profit and possibly a livelihood.

## B. The IRS "activity engaged in for profit" factors

■ As mentioned above, the IRS has set forth a number of nonexclusive factors to be considered when determining whether a taxpayer's activity constitutes a trade or business for tax purposes. *See* Treas. Reg. § 1.183–2(b). These factors include: (1) the manner in which the taxpayer carries on the activity (e.g., keeping records in a businesslike way); (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. *Id.* The IRS stresses that these factors are nonexclusive and that the ultimate determination of whether an activity qualifies as a trade or business for taxation purposes depends on the specific facts of the situation.[11] *Id.* Like the criteria articulated in *Groetzinger,* the IRS factors are not binding on our court because they apply to the federal tax code, but they are still instructive because, as previously noted,

---

11. Specifically, the IRS regulations state:
   In determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account. No one factor is determinative in making this determination. In addition, it is not intended that only the factors described in this paragraph are to be taken into account in making the determination, or that a determination is to be made on the basis that the number of factors (whether or not listed in this paragraph) indicating a lack of profit objective exceeds the number of factors indicating a profit objective, or vice versa.
   Treas. Reg. § 1.183–2(b).

the Minnesota tax code incorporates aspects of the federal tax code. *See* Minn. Stat. §§ 290.01, subd. 19, 290.091, subd. 2.

When applying the IRS factors, we are left with the clear impression that Busch's case presents a close call; nevertheless, we believe that overall, the most relevant factors weigh in Busch's favor. Some factors admittedly do not favor Busch. For example, the second factor—the expertise of the taxpayer or her advisors—weighs against Busch in that she openly admits that she is not an expert on how slot machines work. The fourth factor is the expectation that assets used in the activity may appreciate in value; this factor is not relevant because Busch did not acquire any assets in her gambling pursuits. The fifth factor is the success of the taxpayer in carrying on other similar or dissimilar activities. Busch had no reported success in any other gambling activities and acknowledged that she had not undertaken any. Under the sixth factor, the IRS also considers the taxpayer's history of income or losses with respect to the activity. This factor weighs against Busch, as she not only did not make money, she lost considerable sums consistently for three years.[12]

But at least four of the IRS factors favor Busch's position, and we believe that these factors are the most applicable and meaningful to her case. For example, the first factor the IRS considers is the manner in which the taxpayer carries on the activity. Busch has scrupulously kept records and reported income, which suggests that her gambling was a trade or business. The third IRS factor is the time and effort expended by the taxpayer in carrying on the activity. Busch expended a significant

amount of time on gambling, up to 60 hours per week. The seventh IRS factor is the amount of occasional profits, if any, which are earned. Busch did win several jackpots, which may have provided her with short-term profits. Under the eighth factor, the IRS considers the financial status of the taxpayer—whether the taxpayer has another job or substantial income from another source. Busch's income came entirely from other sources, specifically her savings and retirement funds, but she had no occupation other than her claimed gambling occupation during the relevant tax years. This suggests that Busch intended to devote herself to gambling as a possible means of earning a living and was simply unsuccessful in making any money.

We conclude that overall, both the *Groetzinger* factors and the IRS factors narrowly support Busch's contention that she engaged in gambling as a trade or business. While, as mentioned above, neither the *Groetzinger* factors nor the IRS factors are binding on our court, they help to inform our decision here and support a conclusion that Busch's gambling did constitute a trade or business for the purpose of computing her Minnesota tax liability.

## C. Reasonable expectation of profit

The commissioner and the Minnesota Tax Court both appear to have based their conclusions that Busch's gambling did not constitute a trade or business in large part on their determination that her expectation of profit was not reasonable. Slot machines are programmed for the gambler to lose. Over time and despite Busch's assertion that she could tell which machines would pay out, she never made a

---

**12.** The ninth factor is whether the activity involves elements of personal pleasure or recreation. Busch testified that her gambling was "just plain hard work." But the record is unclear whether or to what degree Busch enjoyed gambling. Therefore, the ninth factor does not appear to be probative on the issue of whether Busch's gambling constituted a trade or business.

profit. Indeed, she lost money steadily for three years. Under these circumstances, it is fair for the commissioner to assert that Busch's belief that she could make a profit was unreasonable.

On this point we find the IRS regulations informative and helpful. In its regulations regarding. "Activities not engaged in for profit," wherein guidance on determining whether an activity qualifies as a trade or business is given, the IRS states: "Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit." Treas. Reg. § 1.183–2(a) (1972). Several federal circuit courts of appeals that have addressed this issue are in agreement with the IRS that while it is absolutely necessary for the person engaging in the claimed trade or business to have engaged in the activity with the intent to earn a profit, that expectation of earning a profit need not be reasonable.[13]

■ The Minnesota Tax Court reached a different conclusion when it held that Busch must have had a reasonable expectation of profit from her gambling activity for the activity to qualify as a trade or business. When interpreting Minnesota tax law, we are not bound by the federal courts' determination of federal tax law. But we disagree with the tax court's conclusion that a reasonable expectation of profit is required for a given activity to qualify as a trade or business. We conclude that it is often too difficult and uncertain for courts to decide, from the safe position of hindsight, which business activities had a reasonable expectation of profit and which did not. Furthermore, if trade or business tax incentives hinged upon a court's determination of whether an activity had a "realistic" expectation of profit, valuable innovation in our entrepreneurial society could be chilled. We conclude that the taxpayer's expectation of profit from a given activity need not always be reasonable for the activity to qualify as a trade or business.[14]

■ As the above discussion shows, the determination of whether an activity constitutes a trade or business is a case-by-case, fact-based inquiry and requires consideration of many factors. While the determination may be difficult, we believe that in this case, the commissioner's con-

13. See, e.g., Bryant v. Comm'r, 928 F.2d 745, 750 (6th Cir.1991) (stating that "the court should not engage in an independent inquiry of whether the [business] was *likely* to be profitable" and the court should "[keep] in mind that a small chance of making a large profit can support a profit motive"); Evans v. Comm'r, 908 F.2d 369, 373 (8th Cir.1990) ("[W]hile a reasonable expectation of profit is not required, a bona fide objective of realizing a profit must exist.").

14. We note that we stated that tax statutes must be strictly construed against the taxing authority and in favor of the taxpayer when ambiguous. *Benda v. Girard*, 592 N.W.2d 452, 455 (Minn.1999). In a few cases, we have also articulated an exception to this general rule in the case of tax deductions. *See, e.g., National Can Corp. v. Comm'r of Revenue*, 437 N.W.2d 416, 418 (Minn.1989). But we have said that strict construction of tax deduction or exemption statutes should not invariably be applied when the reason for invoking the rule is not present. *Sevcik v. Comm'r of Taxation*, 257 Minn. 92, 101–02, 100 N.W.2d 678, 685–86 (1959); *see also Abex Corp. v. Comm'r of Taxation*, 295 Minn. 445, 468–69, 207 N.W.2d 37, 50 (1973) (Kelly, J., dissenting). Here, the purpose of the trade or business tax deduction is to reward and encourage business ventures. This purpose will be hindered and innovation discouraged if we were to put the burden on the taxpayer of proving that her activity qualifies as a trade or business. Therefore, we decline to apply the exception to the general rule that tax statutes must be strictly construed in favor of the taxpayer.

clusion was not consistent with the purpose of the Minnesota AMT law. Having considered the *Groetzinger* factors, the IRS factors, our discussion of the reasonableness of Busch's expectation of profit, and the specific facts of this case, we conclude that Busch's gambling did constitute a trade or business for the purposes of computing her Minnesota tax liability. Accordingly, we reverse the decision of the tax court.

Reversed.