STATE OF MINNESOTA

IN SUPREME COURT

A23-1259

Tax Court                                                                          Moore, III, J.
                                                                    Took no part, Hennesy, J.

Christopher J. Wendell and Nancy A. Wendell,

          Relators,

vs.                                                                      Filed:  June 5, 2024
                                                               Office of Appellate Courts
Commissioner of Revenue,

          Respondent.

_____

Christopher J. Wendell, Nancy A. Wendell, Hudson, Wisconsin, pro se.

Keith Ellison, Attorney General, Jennifer A. Kitchak, Assistant Attorney General, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

1.     The Commissioner of Revenue has the authority to adjust a taxpayer's reported federal adjusted gross income when determining the correct amount of state income tax owed by the taxpayer under our decision in *Specktor v. Commissioner of Revenue*, 308 N.W.2d 806 (Minn. 1981) and Minn. Stat. § 270C.33, subdivision 4 (2022).

2.     The tax court did not err in granting summary judgment in favor of the Commissioner of Revenue.

3.    The statutory penalty imposed for filing a frivolous tax return under Minn. Stat. § 289A.60, subd. 7 (2022), is not unconstitutional under the Due Process Clauses and Excessive Fines Clauses of the United States Constitution and Minnesota Constitution or the Equal Protection Clause of the United States Constitution.

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

MOORE, III, Justice.

The dispute here centers on two years of Minnesota individual tax returns filed by Relators Christopher and Nancy Wendell ("the Wendells"). In 2019 and 2020, the Wendells, residents of Wisconsin, filed joint tax returns reporting no Minnesota taxable income, despite receiving more than 1 million dollars in payments from Minnesota sources over those 2 years. The Wendells asserted that the payments received from Minnesota sources were not taxable wages or ordinary business income. Respondent Commissioner of Revenue disagreed, modified the Wendells' reported income accordingly, assessed additional income tax, and imposed a 25 percent penalty for filing a frivolous tax return under Minn. Stat. § 298A.60, subd. 7 (2022). The Wendells appealed the Commissioner's assessment and the Minnesota Tax Court granted summary judgment in the Commissioner's favor. Because we conclude that (1) the Commissioner of Revenue had the authority to adjust the Wendells' reported federal adjusted gross income, (2) the tax court did not err in granting summary judgment in favor of the Commissioner, and (3) the

3

statutory penalty for filing a frivolous return under Minn. Stat. § 289A.60, subd. 7 (2022), is constitutional, we affirm the decision of the tax court.

## FACTS

Relator Christopher Wendell, a resident of Wisconsin, is an anesthesiologist licensed to practice medicine in Minnesota. In 2019, he received $551,214.69 in wages or compensation from Associated Anesthesiologists, P.A. ("AAPA"), located in Plymouth. From those wages, $43,315.12 was withheld by AAPA for Minnesota income taxes. He also received $33,658 in ordinary business income from Associated Health Services, Inc. ("AHS"), also located in Plymouth. In 2020, Dr. Wendell received $589,530.00 in wages or other compensation from AAPA, from which $47,881.00 was withheld for Minnesota income taxes. He also received $26,799 in ordinary business income from Health Billing Systems, Inc. ("HBS"), a Minnesota business.

Dr. Wendell and his wife, Nancy Wendell, filed timely joint Minnesota individual tax returns for 2019 and 2020 tax years. On their 2019 tax return, the Wendells reported $0 in federal adjusted gross income and $0 in Minnesota taxable income, despite receiving over half a million dollars in payments from AAPA and AHS. On their 2020 tax return, the Wendells reported $7,226 in federal adjusted gross income and $0 in Minnesota taxable income. For both years, the Wendells declared no Minnesota individual income tax liability and requested refunds of all state tax withheld from the payments to Christopher Wendell from AAPA. In making this request, the Wendells asserted that the payments from AAPA, AHS, and HBS to Christopher Wendell were not "connected with any activity or of a status which would render payments to [them] subject to federal income excise tax."

4

The Wendells did not explain what the payments from AAPA, AHS, or HBS were, if not taxable income, and they did not explain why these Minnesota businesses reported those payments as wages or ordinary business income.

The Commissioner of Revenue reviewed the Wendells' 2019 and 2020 tax returns separately after they were filed. Following these reviews, the Commissioner issued orders adjusting the Wendells' income tax liability, finding that they had unreported wages and ordinary business income. The Commissioner then adjusted the amount of federal adjusted gross income reported on the return, determined that no tax refund was owed to the Wendells, and assessed additional tax and interest.

As part of the adjustment to the 2019 tax return, the Commissioner warned the Wendells that if they "continue[d] to file Minnesota income tax returns which the [Minnesota Department of Revenue] considers frivolous," a frivolous return penalty would be imposed under Minn. Stat. § 289A.60, subd. 7. In 2020, after the Wendells again did not report any Minnesota taxable income, the Commissioner assessed a 25 percent frivolous return penalty, totaling $13,223.75.

The Wendells requested administrative review of the Commissioner's orders, arguing that the Commissioner lacked the authority to amend their reported federal adjusted gross income and challenging the imposition of the frivolous return penalty. The Minnesota Department of Revenue filed two supervening Notices of Determination on Appeal affirming the Commissioner's tax determinations and adjustments.

The Wendells appealed the Department of Revenue's orders to the Minnesota Tax Court, reiterating the arguments made during the administrative appeal. They further

5

argued that the penalty for filing a frivolous tax return under Minn. Stat. § 289A.60, subd. 7, is unconstitutional. Following a motion for summary judgment by the Commissioner of Revenue, the tax court granted partial summary judgment. The tax court first determined that the Wendells failed to show any disputed material facts regarding whether the disputed payments from AAPA, AHS, and HBS were, in fact, taxable income. Next, the tax court concluded that the Commissioner plainly has the authority to adjust incorrect tax returns and determined that the Wendells' returns were validly adjusted to include the wages and ordinary business income received from AAPA, AHS, and HBS. In addition, the tax court determined that the frivolous return penalty had been properly imposed, but declined to decide whether the penalty statute is constitutional for lack of jurisdiction.[1]

After staying the case and referring it to the District Court for the Second Judicial District to obtain jurisdiction over the undecided constitutional issue, the tax court granted summary judgment on the remaining issues in favor of the Commissioner. The tax court

---

[1] The tax court does not have original jurisdiction to hear constitutional matters but can gain jurisdiction over constitutional issues through a process first articulated in *Erie Mining Co. v. Commissioner of Revenue*, 343 N.W.2d 261, 264 (Minn. 1984). *See* Minn. Stat. § 271.01, subd. 5 (2022) ("[T]he Tax Court shall be the sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state . . . ."). Under this process, referred to as the "Erie shuffle," the tax court may stay proceedings and refer the case to the district court for determination of the constitutional issues. *Erie Mining Co.*, 343 N.W.2d at 264. If the district court declines to make a constitutional determination and refers the case back to the district court, the tax court may then exercise jurisdiction over the constitutional issue. *Id.*; *see also Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 199 (Minn. 2000) ("In essence, the district court transfers its legal and equitable powers to the tax court, thereby giving the tax court jurisdiction to hear constitutional issues."). This process occurred here and enabled the tax court to obtain jurisdiction to rule on the Wendells' properly raised constitutional claims regarding the penalty statute.

6

found that the Wendells' tax liability was correctly calculated and adjusted, that no material facts were in dispute, and that the frivolous return penalty statute was constitutional.[2]  The Wendells then appealed to this court by writ of certiorari.  *See* Minn. Stat. § 271.10 (2022).

**ANALYSIS**

The Wendells raise three issues on appeal.  First, the Wendells assert that the Commissioner of Revenue lacked the authority to modify their reported federal adjusted gross income when determining their state tax liability.  Second, the Wendells contend that the tax court improperly granted summary judgment in favor of the Commissioner.  Lastly, the Wendells assert that the penalty for filing a frivolous tax return found in Minn. Stat. § 289A.60, subd. 7, is unconstitutional.  We address each issue in turn.

I.

We begin with the question of whether the Commissioner of Revenue has the authority to adjust or correct the amount of *federal* adjusted gross income reported on a taxpayer's Minnesota tax return to determine the amount of *state* tax owed.  The tax court below determined that the Commissioner did have this authority.  We review "orders of the tax court to determine whether the tax court lacked jurisdiction, whether its decision was not justified by the evidence or did not conform to the law, and whether the tax court otherwise committed an error of law."  *Turner v. Comm'r of Revenue*, 840 N.W.2d 205, 207 (Minn. 2013); *see also* Minn. Stat. § 271.10, subd. 1.

---

[2]    The tax court additionally granted summary judgment in favor of the Commissioner on an issue relating to Minnesota's ability to tax income from a brokerage account and corresponding interest, which is not at issue in this appeal.

The amount of income tax owed under Minnesota law rests in part upon an individual's federal adjusted gross income. Minnesota law imposes income tax on the "taxable income" of residents and non-residents. Minn. Stat. § 290.03(1) (2022). The income of non-residents, like the Wendells, is generally taxable "only to the extent that income is derived from activities within Minnesota." *Luther v. Comm'r of Revenue*, 588 N.W.2d 502, 507 (Minn. 1999). Non-resident taxable income includes the amount of the taxpayer's "net income" apportioned to Minnesota. Minn. Stat. § 290.01, subds. 22, 29 (2022).[3] For an individual, Minnesota defines "net income" as the "*federal* adjusted gross income" with certain state modifications permitted by statute. Minn. Stat. § 290.01, subd. 19(b) (2022) (emphasis added). In turn, federal gross income is defined as:

> [A]ll income *from whatever source derived*, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, fringe benefits, and similar items; (2) Gross income derived from business; (3) Gains derived from dealings in property; (4) Interest; (5) Rents; (6) Royalties; (7) Dividends; (8) Annuities; (9) Income from life insurance and endowment contracts; (10) Pensions; (11) Income from discharge of indebtedness; (12) Distributive share of partnership gross income; (13) Income in respect of a decedent; (14) Income from an interest in an estate or trust.

I.R.C. § 61 (emphasis added).

If net income reported on a Minnesota tax return is inaccurate, the Commissioner of Revenue is authorized to assess additional tax if the Commissioner "determines that the correct amount of tax is different than that assessed on a return filed with the

---

[3]     The Wendells' challenge is focused upon the Commissioner's adjustment to their reported "federal adjusted gross income." Therefore, we do not address the manner in which the amount of net income apportioned to Minnesota is determined.

8

commissioner."[4] Minn. Stat. § 270C.33, subd 4(a)(1) (2022). We addressed the issue of the Commissioner's authority to alter or adjust a taxpayer's reported income—derived from their federal adjusted gross income—in *Specktor v. Commissioner of Revenue*, 308 N.W.2d 806 (Minn. 1981).[5]

In *Specktor*, the Commissioner adjusted the taxpayers' tax liability after determining that a federal taxation election and subsequent deduction of losses from the operation of several apartment buildings that reduced their taxable income on Minnesota partnership and corporate tax returns were incorrectly taken. *Id.* at 807. The tax court determined that the Commissioner could not make independent adjustments to a taxpayer's federal adjusted gross income and, therefore, was bound by the federal determination of adjusted gross income. *Id.* at 807–808. On appeal, we held that the Commissioner is authorized to "adjust a taxpayer's Minnesota gross income notwithstanding the federal government's failure to make a similar adjustment." *Id.* at 808. Furthermore, and importantly, we held that

---

[4]    In addition, the Commissioner has the authority to "audit and adjust the taxpayer's computation of federal adjusted gross income[] [and] federal taxable income . . . to make them conform with the provisions of chapter 290 or section 298.01." Minn. Stat. § 289A.35(a) (2022). The Commissioner did not invoke this statutory authority in adjusting the Wendells' tax liability, instead relying solely on Minn. Stat. § 270C.33, subd. 4.

[5]    *Specktor* dealt with the taxpayer's "gross income" under Minn. Stat. § 290.01, subd. 20 (1980). 308 N.W.2d at 807–08. At the time *Specktor* was decided, "gross income" for individuals, estates, and trusts was defined as "the adjusted gross income as computed for federal income tax purposes." Minn. Stat. § 290.01, subd. 20. And "net income" was defined as "gross income, as defined in subdivision 20" less the applicable statutory deductions. Minn. Stat. § 290.01, subd. 19 (1980). Because the dispute here likewise concerns "federal adjusted gross income," the reasoning in *Specktor* is applicable.

"Minnesota's definition of gross income as federal adjusted gross income refers to the *correct* federal adjusted gross income." *Id.* at 809 (emphasis added).[6]

The Wendells argue that the tax court misinterpreted *Specktor*, which they assert is correctly interpreted as giving the Commissioner the authority *only* to correct allowable additions or deductions to a taxpayer's federal adjusted gross income. According to the Wendells, the Commissioner cannot change their reported amount of federal adjusted gross income when the federal government has made no modification. We disagree.

We reaffirm that, under *Specktor*, the Commissioner of Revenue is authorized to adjust incorrect Minnesota tax returns, including incorrectly reported federal adjusted gross income. *See also* Minn. Stat. § 270C.33, subd. 4. The Wendells' argument that *Specktor* is distinct because it dealt more specifically with allowances and deductions is immaterial; the reasoning applies generally to the Commissioner determining a taxpayer's "*correct* federal adjusted gross income." 308 N.W.2d at 809 (emphasis added). As we noted in *Specktor*, a conclusion to the contrary would make the statutory provisions relating to the investigation and correction of tax returns, such as Minn. Stat. § 270C.33, a nullity. 308 N.W.2d at 808. Under Minnesota tax laws, purported factual declarations made on a tax return—including those relating to the correct amount of federal adjusted gross income—

---

[6] In the Commissioner's opening brief, the Commissioner improperly cited this quote as "Minnesota's definition of gross income *and* federal adjusted income refers to the correct *federal gross income*." (Emphasis added.) The Commissioner filed a citation to supplemental authority correcting the misquote. Despite the Wendells' arguments to the contrary, this misquote appears to have been inadvertent and is not material to our consideration of the issues.

do not make that return impervious to investigation and subsequent correction, if errors are found. *Id.* at 809; *see also* Minn. Stat. § 270C.33, subd. 4.

## II.

Having determined that the Commissioner of Revenue has the authority to adjust a taxpayer's reported amount of federal adjusted gross income on their Minnesota tax return, we now turn to the question of whether the tax court erred in granting summary judgment in favor of the Commissioner. On appeal, we review orders of summary judgment from the tax court to determine "(1) whether there are any genuine issues of material fact and (2) whether the lower court erred in its application of the law." *Bond v. Comm'r of Revenue*, 691 N.W.2d 831, 836 (Minn. 2005).

Summary judgment is appropriate if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01.[7] The nonmoving party " 'must do more than rest on mere averments' to create a genuine issue of material fact that precludes summary judgment." *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 172 (Minn. 2021) (quoting *DLH, Inc. v. Russ*, 556 N.W.2d 60, 70–71 (Minn. 1997)). "Summary judgment is 'inappropriate when reasonable persons might draw different conclusions from the evidence presented.' " *See Henson v. Uptown Drink, LLC*, 922 N.W.2d 185, 190 (Minn. 2019) (quoting *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008)).

---

[7] We note that the Minnesota Rules of Evidence and Rules of Civil Procedure generally govern procedures in the tax court. Minn. Stat. § 271.06, subd. 7 (2022).

The Wendells first contend that the tax court improperly relied on hearsay evidence from the Commissioner in granting summary judgment. Evidence cited to support or dispute a fact must be in a form that would be admissible in evidence. Minn. R. Civ. P. 56.03(b). Here, the tax court relied on declarations and exhibits from the Commissioner in determining that there were no genuine issues of material fact. The exhibits submitted by the Commissioner included W-2 wage and tax statement forms and K-1 shareholder income forms produced by the Internal Revenue Service and the Minnesota Department of Revenue, which would be admissible as records of regularly conducted business activity and public records. Minn. R. Evid. 803(6), (8). The Commissioner's exhibits also included interrogatory answers provided by the Wendells and affidavits from attorneys at the Department of Revenue, both of which are properly considered as evidence on summary judgment. *See* Minn. R. Civ. P. 56.03(a) (stating that a party must support assertions by "citing to particular parts of materials in the record, including . . . affidavits, . . . admissions, interrogatory answers"). The Wendells' objections to the admissibility and relevance of this evidence are unpersuasive, and the tax court properly relied on such evidence in determining whether summary judgment was appropriate.

The Wendells also argue that the tax court failed to consider their affidavits opposing the motion for summary judgment. These affidavits, however, contained "mere averments," rather than specific evidence creating a genuine dispute of material fact. *Hagen*, 963 N.W.2d at 172. Nowhere in these affidavits do the Wendells provide a colorable, supported explanation for what the payments made to Christopher Wendell by AHS, AAPA, and HBS were, if not taxable wages and ordinary business income. And the

affidavits give no explanation as to why AAPA, AHS, and HBS reported the disputed payments as taxable income on W-2 and K-1 tax forms. The affidavits merely assert that "[t]o [Christopher Wendell's] knowledge, [his] activities in 2019 and 2020 were not of a class or kind taxable or reportable on an income tax return." Statements such as this are insufficient to create a genuine dispute of material fact, such that a trial on the issue would be warranted. As the tax court correctly noted below, "disagreement with the facts presented does not make them disputed." *See Hagen*, 963 N.W.2d at 172.

Considering the record before us, we conclude that the tax court properly evaluated the admissibility of the evidence submitted on summary judgment. Furthermore, we conclude that the tax court did not err in finding summary judgment appropriate; the Commissioner demonstrated that there is no genuine issue of material fact, and the Wendells did not create any genuine disputes of material fact that would preclude summary judgment.

III.

We lastly address the Wendells' constitutional challenges to the penalty for filing a frivolous tax return found in Minn. Stat. § 289A.60, subd. 7. We review the tax court's determination of whether a tax statute is constitutional de novo. *Olson v. Comm'r of Revenue*, 955 N.W.2d 605, 607 (Minn. 2020). State tax statutes are presumed constitutional, and the party challenging a statute's constitutionality "bears a heavy burden to overcome that presumption." *Sheridan v. Comm'r of Revenue*, 963 N.W.2d 712, 716 (Minn. 2021). "[W]e 'exercise our power to declare a statute unconstitutional with extreme caution and only when absolutely necessary.' " *Fletcher Props., Inc. v. City of*

13

*Minneapolis*, 947 N.W.2d 1, 9 (Minn. 2020) (citing *Boutin v. Lafleur*, 591 N.W.2d 711, 714 (Minn. 1999)).

A summary of the frivolous return penalty is necessary before turning to the merits of the Wendells' constitutional claims. Minnesota Statutes section 289A.60, subdivision 7, details the frivolous return penalty as follows:

> If a taxpayer files what purports to be a tax return or a claim for refund but which does not contain information on which the substantial correctness of the purported return or claim for refund may be judged or contains information that on its face shows that the purported return or claim for refund is substantially incorrect and the conduct is due to a position that is frivolous or a desire that appears on the purported return or claim for refund to delay or impede the administration of Minnesota tax laws, then the taxpayer shall pay a penalty of the greater of $1,000 or 25 percent of the amount of tax required to be shown on the return. In a proceeding involving the issue of whether or not a taxpayer is liable for this penalty, the burden of proof is on the commissioner.

"Frivolousness" is determined objectively, and "a position is 'frivolous' if it has no basis in law or fact." *Bond*, 691 N.W.2d at 839 (citations omitted). "What is required to reach the threshold of frivolity is that a position is without merit from the perspective of the tax laws." *Weed v. Comm'r of Revenue*, 489 N.W.2d 525, 529 (Minn. App. 1992), *rev. denied* (Minn. Sept. 15, 1992).

## A.

We first address the Wendells' argument that Minn. Stat. § 289A.60, subd. 7, violates due process because it fails to provide adequate notice for what constitutes a

"substantially incorrect" or "frivolous" return.[8]  The Wendells appear to be making a "void-for-vagueness" due process claim and we analyze this claim accordingly.

The Due Process Clauses of the United States and Minnesota Constitutions provide that the government cannot deprive a person of "life, liberty, or property without due process of law."  U.S. Const. amends. V, XIV; Minn. Const. art. I, § 7.  A statute is unconstitutionally vague under the Due Process Clause when, viewed objectively, a person "of common intelligence must necessarily guess at its meaning."  *St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Schs.*, 332 N.W.2d 1, 7 (Minn. 1983) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973)) (internal quotation marks omitted).  "The fact that taxpayers must rely on common sense and intelligence to determine whether their conduct complies with the law does not render the law unconstitutionally vague on its face."  *State v. Enyeart*, 676 N.W.2d 311, 321 (Minn. 2004).  Additionally, there is a "greater tolerance" of statutes with civil, rather than criminal penalties.  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982).

The Wendells' argument that they could not reasonably discern what would constitute a "frivolous" tax return is unpersuasive.  Although Minn. Stat. § 289A.60, subd. 7, does not offer specific examples of frivolous conduct, it does provide a robust description of what categories of conduct would qualify, including:

---

[8]     The Wendells also argue that Minn. Stat. § 289A.60, subd. 7, is unconstitutional under the First Amendment of the United States Constitution.  *See* U.S. Const. amend. I.  This claim was first raised in the Wendells' reply brief before this court and was not argued before the tax court below.  As a result, the Wendells have forfeited consideration of this First Amendment claim.  *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that the court will not consider issues not presented earlier in the case).

15

[A] tax return . . . [that] contains information that on its face shows that the purported return or claim for refund is substantially incorrect and the conduct is due to a position that is frivolous or a desire that appears on the purported return or claim for refund to delay or impede the administration of Minnesota tax laws.

Under-reporting, misreporting, or otherwise failing to report taxable Minnesota income, based on an unsupported assertion that the income is not taxable, would unquestionably qualify as a "substantially incorrect" or "frivolous" return under an objective definition. *See, e.g.*, *Bond*, 691 N.W.2d at 839 (finding that a frivolous return is one that "has no basis in law or fact"); *Sullivan v. United States*, 788 F.2d 813, 815 (1st Cir. 1986) (collecting cases for the proposition that arguing that wages received were not taxable income is a frivolous position); *cf. Brintnall v. Comm'r of Revenue*, No. 7495-R, 2003 WL 1877239, at *3–4 (Minn. T.C. Apr. 8, 2003) (upholding the imposition of the frivolous return penalty where taxpayer claimed to have no federal taxable income because of an improperly claimed deduction).[9]

Here, the Wendells failed to report over a million dollars of income from Minnesota sources over 2 years. After receiving a warning from the Commissioner of Revenue that a penalty would be imposed if they "continue[d] to file Minnesota income tax returns which the [Department of Revenue] considers frivolous," the Wendells filed another tax return

---

[9] Even further, the Internal Revenue Service publishes an annual document that details common tax contentions that have been deemed "frivolous" and may subject a taxpayer to a frivolous return penalty under I.R.C. § 6702(a). One such frivolous argument is that a taxpayer can avoid income tax "by filing a tax return that reports no income and no tax liability (a 'zero return') even though they have taxable income." Internal Revenue Service, *The Truth About Frivolous Tax Arguments* 4–5 (March 2022). Another frivolous tax argument listed is that "wages, tips, and other compensation received for personal services are not income." *Id.* at 9–10.

making the same argument that the payments received from Minnesota sources were not taxable income. The tax court below found this position was "so untenable as to be frivolous," noting that "[t]he Wendells cannot escape taxation by renaming their income." We agree. Indeed, their blanket denial that the disputed payments from AAPA, AHS, and HBS were not taxable income has no basis in law or fact. Because Minn. Stat. § 289A.60, subd. 7, establishes that the Wendells' position is of the type that would be considered frivolous, they had adequate notice of the potential penalty for their conduct. *See State v. Calmes*, 632 N.W.2d 641, 648 (Minn. 2001) (acknowledging that "citizens are presumed to know the law").

For the reasons stated above, we hold that the penalty for filing a frivolous tax return under Minn. Stat. § 289A.60, subd. 7, is not unconstitutional on due process grounds.

B.

Next, we address the Wendells' contention that Minn. Stat. § 289A.60, subd. 7, violates the Excessive Fines Clause. The Excessive Fines Clause of the United States Constitution provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; *see also* Minn. Const. art. I, § 5.

Our inquiry into whether a statutory penalty is excessive focuses on proportionality; in other words, does the penalty "bear some relationship to the gravity of the offense that it is designed to punish?" *Wilson v. Comm'r of Revenue*, 656 N.W.2d 547, 554–55 (Minn. 2003) (citation omitted) (internal quotation marks omitted). In evaluating proportionality, we analyze three factors: (1) the gravity of the offense compared to the harshness of the

17

penalty; (2) comparison of the contested penalty with other penalties imposed for other offenses in the same jurisdiction; and (3) comparison of the contested fine with fines imposed for the same offense in other jurisdictions. *State v. Rewitzer*, 617 N.W.2d 407, 414 (Minn. 2000).

The Wendells argue that the frivolous return penalty—a fine of the greater of $1,000 or 25 percent of the amount of tax owed—violates the Excessive Fines Clause because it is "unduly burdensome and excessive to many filers," and that the penalty imposed is disproportionate to the amount of harm, if any, caused by their conduct.[10] For the reasons discussed below, this argument fails.

We analyze the penalty imposed by Minn. Stat. § 289A.60, subd. 7, under the three-part test articulated in *Rewitzer*. The first prong of that test asks us to evaluate the gravity of the offense compared to the harshness of the penalty. *Rewitzer*, 617 N.W.2d at 414. We conclude that the penalty imposed by Minn. Stat. § 289A.60, subd. 7, adequately balances the gravity of the offense. The filing of frivolous tax returns creates unnecessary delay and waste of government resources due to the investigation necessary to correct and adjust tax assessments. A penalty of up to 25 percent of the tax amount actually owed is proportionate

---

[10] In addition, the Wendells cite to penalties imposed for serious felony offenses, such as fifth-degree criminal sexual conduct, emphasizing that the penalty they received under Minn. Stat. § 289A.60, subd. 7, is greater than the statutory maximum penalties for those crimes. This citation is misplaced. In analyzing whether a penalty is unconstitutionally excessive, the focus is on comparing the disputed penalty to the penalties *for similar offenses* in the same jurisdiction. *See Wilson*, 656 N.W.2d at 555–56 (comparing the disputed wage levy sanction in tax statute to "similar wage levy sanctions in Minnesota"); *Rewitzer*, 617 N.W.2d at 414–15 (comparing the disputed fine for a criminal offense to "other similarly ranked offenses" in the Minnesota Sentencing Guidelines).

to the harm caused by the delayed administration of tax laws. *See Weed*, 489 N.W.2d at 528–29 ("The federal penalty statute was enacted to deter tax protestors from filing frivolous returns") (citing *Baskin v. United States*, 738 F.2d 975, 977 (8th Cir. 1984)).

The second prong of the *Rewitzer* test requires us to compare the penalty in Minn. Stat. § 289A.60, subd. 7, to the penalties imposed for similar offenses in Minnesota. *Rewitzer*, 617 N.W.2d at 414. Indeed, the other subdivisions of Minn. Stat. § 289A.60 (2022) impose comparable fines. *See* Minn. Stat. § 289A.60, subd. 4(b) (20 percent penalty for substantial understatement of tax liability), subd. 5 (10 percent penalty for intentional disregard of rules or laws), subd. 5a (25 percent penalty for repeated failure to file returns or pay taxes), subd. 6 (50 percent penalty for failure to file or filing a false or fraudulent return), subd. 20 (20 to 50 percent penalty for promoting abusive tax shelters), subd. 24 (10 percent penalty for failure to notify the Commissioner about a change in a taxpayer's federal return), and subd. 27 (20 percent addition to tax amount for a "reportable transaction understatement"). Although some penalties in section 289A.60 are lower than that prescribed in subdivision 7, some are also higher. We conclude that the penalty for filing a frivolous return is comparable and proportional to penalties for other tax offenses of lesser and greater seriousness in Minnesota.

Lastly, we analyze the third prong of the *Rewitzer* test, which compares the penalty in Minn. Stat. § 289A.60, subd. 7, to penalties imposed for the same offense in other jurisdictions. *Rewitzer*, 617 N.W.2d at 414. Other states take varying approaches when penalizing the filing of frivolous tax returns. For example, Iowa imposes a penalty of 75 percent of the amount claimed for "false or frivolous application for refund." Iowa Code

19

§ 421.27 6.*a*.(1) (2023). Other states do not feature a specific penalty for frivolous returns but group frivolous returns with other types of erroneous filings. *See, e.g.*, Wis. Stat. § 71.83(1)(b)7 (2023) (imposing 100 percent penalty for "fraudulently fil[ing] an incorrect claim for refund of tax"); S.D. Codified Laws § 10-59-6 (2023) (imposing 10 percent penalty for failure to file "a return or report which includes all taxable transactions"). Some states impose a lower flat fee for frivolous returns. *See, e.g.*, Ohio Rev. Code Ann. § 5747.15 (West 2023) ($500 penalty); D.C. Code § 47-4216 (2023) ($500 penalty); Ala. Code § 40-2A-11(e) (2023) ($250 penalty); Ga. Code Ann. § 48-7-57.1(a) (2023) ($1,000 penalty). Because the penalty in Minn. Stat. § 289A.60 falls somewhere in the middle of penalties imposed in other jurisdictions, we conclude that this factor weighs in favor of a finding of proportionality.

On balance, we conclude that the penalty imposed for filing a frivolous tax return under Minn. Stat. § 289A.60, subd. 7, is proportional to the gravity of the offense it is designed to punish. Accordingly, Minn. Stat. § 289A.60, subd. 7, is not unconstitutional under the excessive fines clause.[11]

---

[11] Finally, the Wendells argue that the Minn. Stat. § 289A.60, subd. 7, violates the Equal Protection Clause. The entirety of their argument is this statement: "Equal protection concerns are thus raised, as well – Does the right to be free from excessive fines apply more to people residing or working in other states than to those living or working in Minnesota?" In response, the Commissioner asserts that "the tax court properly rejected [the claim] as 'nonsensical.' " Without more, the Wendells' blanket assertion that the frivolous return penalty in Minn. Stat. § 289A.60, subd. 7, violates the Equal Protection Clause fails to overcome the presumption of constitutionality afforded to tax statutes. Therefore, we conclude that Minn. Stat. § 289A.60, subd. 7, is not unconstitutional on equal protection grounds.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the tax court.

Affirmed.


HENNESY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.