*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0399**

Kareem INC,
Appellant,

vs.

Property Seized by Minnesota Department of Revenue
in Goodhue County et al,
Respondent.

**Filed December 1, 2025
Affirmed
Smith, Tracy M., Judge**

Goodhue County District Court
File No. 25-CV-24-1551

Craig J. Beuning, Wayne B. Holstad, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, Morgan Alexander, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Ede, Presiding Judge; Smith, Tracy M., Judge; and Cochran, Judge.

## NONPRECEDENTIAL OPINION

**SMITH, TRACY M.**, Judge

Appellant Kareem INC challenges a judgment of forfeiture of tobacco products seized by respondent Minnesota Department of Revenue (DOR) from a retail store managed by Kareem. Kareem argues, first, that the district court erred by determining that

the tobacco products were contraband and thus subject to forfeiture. Kareem argues, second, that the forfeiture of the tobacco products was an unconstitutionally excessive fine and that the seizure and forfeiture of the products violated Kareen's procedural-due-process rights. We affirm.

**FACTS**

The following facts are derived from the district court's factual findings, which are not challenged on appeal, and other parts of the undisputed record. Kareem is a Minnesota corporation that manages an I-Mart convenience store located in Red Wing (Red Wing I-Mart) and another convenience store at an Amoco gas station in Plymouth (Plymouth Amoco). Red Wing I-Mart is directly operated by 727 INC—a Minnesota corporation that is managed by Kareem. Plymouth Amoco is managed indirectly by Kareem. The tobacco products[1] at issue in this appeal were seized from Red Wing I-Mart. The seized items consisted of two distinct sets of tobacco products: (1) a variety of products that were purchased from licensed distributor Granite City Jobbing Inc. (the Granite City products) and (2) Loon Maxx vape pens that were purchased from licensed distributor Twin Cities Distribution (the Twin Cities products).

As background, in June 2024, two compliance officers from DOR entered Red Wing I-Mart for inspection. The officers requested documentation for the tobacco products in inventory and were given invoices from Granite City Jobbing and Twin Cities Distribution.

---

[1] "Tobacco products" are generally tobacco-based products, other than cigarettes, that are intended for human consumption. Minn. Stat. § 297F.01, subd. 19 (2024).

2

As for the Granite City Jobbing invoices, the officers noted that those invoices had a "Deliver to" address of Plymouth Amoco, not Red Wing I-Mart. When asked about it by the officers, an employee at Red Wing I-Mart explained that Granite City Jobbing does not deliver to Red Wing, so Red Wing I-Mart has product shipped to Plymouth Amoco and then, once a week, an employee from Plymouth Amoco brings the product to Red Wing I-Mart. The officers explained that these transfers between stores require a distributor or subjobber license and that, without it, the products are contraband. As for the Twin Cities Distribution invoices, the officers noted that the Twin Cities products in inventory had a manufacturing date of 2024 but the supplied invoices from Twin Cities Distribution were dated July and August 2023.

The officers seized both sets of products. Two days later, they followed up by sending a notice of seized contraband to Red Wing I-Mart. The notice explained that the seized products were contraband under Minnesota law because, relevant here, the products (1) were obtained from an unlicensed seller, in violation of Minnesota Statutes section 297F.21, subdivision 1(g) (2024) or (2) were offered for sale or held as inventory without an invoice, in violation of Minnesota Statutes section 297F.21, subdivision 1(j) (2024).

In accordance with the procedures provided by statute to challenge a seizure or forfeiture, *see* Minn. Stat. § 297E.16 (2024), Kareem filed a demand for a judicial forfeiture determination in district court. The district court held a hearing, and the parties filed supplemental briefs. Thereafter, the district court filed an order determining that the

3

tobacco products were contraband and directing entry of a judgment of forfeiture of the products.

This appeal follows.

**DECISION**

Kareem raises statutory and constitutional arguments. As a matter of statute, Kareem argues that the district court erred by determining that the tobacco products seized by DOR were contraband and thus subject to forfeiture. Kareem's makes constitutional claims under the Eighth and Fourteenth Amendments, asserting that the forfeiture of the products was an excessive fine and that the seizure and forfeiture violated Kareem's procedural-due-process rights. We address the arguments in turn.

**I.     The district court did not err by determining that the tobacco products were contraband.**

Kareem challenges the district court's determination that the seized tobacco products were contraband. We are not persuaded.

In evaluating Kareem's challenge, we review questions of statutory interpretation de novo. *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016). We also review de novo the district court's application of law. *Harlow v. State, Dep't of Human Servs.*, 883 N.W.2d 561, 568 (Minn. 2016).

Minnesota law regulates the taxation and distribution of cigarettes and tobacco products. Minn. Stat. §§ 297F.01-.25 (2024). The law imposes certain license requirements to participate in the distribution of cigarettes and tobacco products. Minn. Stat. § 297F.03. The law also establishes when cigarettes and tobacco products are considered contraband,

4

Minn. Stat. § 297F.21, subd 1, and provides that cigarettes and tobacco products that are contraband may be seized and forfeited, *id.*, subds. 2, 3.

Here, two sets of tobacco products were declared contraband and were forfeited. We consider the arguments related to each in turn.

**A.  The district court did not err by declaring the Granite City products contraband because Red Wing I-Mart obtained them from an unlicensed seller.**

The district court, agreeing with DOR, concluded that the Granite City products at Red Wing I-Mart were contraband under paragraph (g) of section 297F.21, subdivision 1. Paragraph (g) declares as contraband "[c]igarette packages or tobacco products obtained from an unlicensed seller." Kareem argues that Red Wing I-Mart did not obtain the products from an unlicensed seller when an employee transferred the Granite City products from one retail store managed by Kareem to another.

To understand Kareem's argument, we first outline the relevant regulatory framework. There are three types of actors involved in the distribution of tobacco products: retailers, distributors, and subjobbers. "Retailers" are persons "in the business of selling, or offering to sell, cigarettes or tobacco products to consumers." Minn. Stat. § 297F.01, subd. 14. Retailers are licensed to sell tobacco products by municipal authorities under Minnesota Statutes chapter 461 (2024). Red Wing I-Mart and Plymouth Amoco are retailers. Their municipal licenses to sell to consumers are not at issue in this case.

A "tobacco product distributor" includes persons who manufacture tobacco products for sale in this state, who import tobacco products from outside the state for sale in the state, or who are engaged in the business of selling tobacco products outside the state

and who ship or transport tobacco products to retailers in the state. Minn. Stat. § 297F.01, subd. 20. A person engaged in the business of a distributor must be licensed by the commissioner of revenue. Minn. Stat. § 297F.03, subd. 1. And a licensed distributor who plans to distribute tobacco products to more than one location must separately apply for a distributor's license for each location. *Id.*, subd. 3.

A "tobacco products subjobber" includes a person other than a distributor who buys products from a distributor and sells them to retailers and includes a "licensed distributor who delivers, sells, or distributes tobacco products upon which the tax imposed by this chapter has been paid from a place other than that licensed in the distributor's license." Minn. Stat. § 297F.01, subd. 21. A person engaged in the business of a subjobber must be licensed by the commissioner of revenue. Minn. Stat. § 297F.03, subd. 1.

The district court concluded that "[t]he distribution of the at-issue tobacco products from the identified Plymouth location to the Red Wing location was not performed by a licensed distributor or licensed subjobber and was therefore performed by an unlicensed seller." Kareem argues that the district court erred by concluding that the transfer of tobacco products between the retail stores required a distributor or subjobber license. It contends that tobacco products could be transferred between commonly managed retail stores with only a retailer license.

Kareem's argument requires us to interpret the statute. The purpose of statutory interpretation is to "effectuate the intent of the legislature." *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019). The first step in interpreting a statute "is to determine whether the statute's language, on its face, is ambiguous." *State v. Thonesavanh*, 904 N.W.2d 432, 435

6

(Minn. 2017). "A statute is ambiguous only if it is subject to more than one reasonable interpretation." *Id.* at 435 (quoting *500, LLC v. City of Minneapolis*, 837 N.W.2d 287, 290 (Minn. 2013)). In interpreting a statute, a reviewing court applies the statutory definitions provided by the legislature. *State v. Khalil*, 956 N.W.2d 627, 632 (Minn. 2021). Where terms are not statutorily defined, the reviewing court looks to "the common and ordinary meanings" of the words used and may consult dictionary definitions to determine those meanings. *Thonesavanh*, 904 N.W.2d at 436. If the court concludes that a statute is unambiguous, it "must apply the statute's plain meaning." *State v. Nelson*, 842 N.W.2d 433, 436 (Minn. 2014) (quotation omitted). Forfeiture statutes are construed strictly in favor of the challenging party. *Riley v. 2987 Station Wagon*, 650 N.W.2d 441, 443 (Minn. 2002) (citing *United States v. One 1936 Model Ford*, 307 U.S. 219, 226 (1939)).

As noted above, tobacco products "obtained from an unlicensed seller" are contraband. Minn. Stat. § 297F.21, subd. 1(g). An "unlicensed seller" is statutorily defined as "anyone who is not licensed [as a distributor or subjobber] to sell the particular product to the purchaser or possessor of the product." Minn. Stat. § 297F.01, subd. 21a. Kareem argues that neither it nor Plymouth Amoco is a "distributor" or "subjobber." But that argument misreads the statute. What matters is whether the tobacco products in inventory at Red Wing I-Mart were obtained from "*anyone* who is not licensed as a [distributor or subjobber] to sell the product" to the possessor of the product. *Id.* (emphasis added). It is undisputed that neither Kareem nor Plymouth Amoco holds a distributor or subjobber license.

The only question that remains is whether the tobacco products at Red Wing I-Mart were "obtained" from Kareem or Plymouth Amoco. "Obtain" is not defined in chapter 297F, and no caselaw has interpreted it in this context. One dictionary defines "obtain" as "to bring into one's own possession; to procure, especially through effort." *Black's Law Dictionary* (12th ed. 2024). Under this definition, Red Wing I-Mart "procured" or "brought" the products into its possession when it received them from Plymouth Amoco— even under the strict construction we must give forfeiture statutes. *Jacobson*, 728 N.W.2d at 521.

Kareem contends that the delivery from Plymouth Amoco to Red Wing I-Mart was merely an internal transfer within a single entity. According to Kareem, because it manages both stores, Red Wing I-Mart did not obtain the product from either Kareem or Plymouth Amoco. But this distinction is not supported by a plain meaning of the word "obtain." Products received from a commonly managed entity are still "brought" or "procured" from that entity.

Kareem argues that this interpretation is absurd because it would require any business that has multiple retail stores and a centralized warehouse or redistribution point to obtain duplicative licenses. *See* Minn. Stat. § 645.17(1) (2024) (stating presumption that the legislature does not intend absurd results). But, as DOR noted in oral arguments, such distribution is contemplated within the statutory scheme as the work of licensed subjobbers. *See* Minn. Stat. § 297F.01, subd. 21 (defining subjobber). We also note that this interpretation comports with DOR guidance for actors involved in the distribution of tobacco products, which was introduced into the record in this case:

8

> Once you receive an invoiced product at a distributor's address or retail location, you must not . . . move, transfer, or swap cigarettes or tobacco products to a different location even if the business is owned by the same entity[.]

We disagree that DOR's reading of the statutory scheme is absurd.

Because the Granite City products at Red Wing I-Mart were obtained from an unlicensed seller, the district court did not err in concluding that the products were contraband.

## B. The district court did not err by declaring the Twin Cities products contraband.

We turn to the second set of seized and forfeited tobacco products—the Twin Cities products. DOR's notice of seized contraband cited paragraph (j) of section 297F.21, subdivision 1, which declares as contraband "tobacco products offered for sale or held as inventory for which there is not an invoice from a licensed seller as required under section 297.F.13, subdivision 4." Section 297F.13, subdivision 4, requires retailers to maintain itemized invoices for all tobacco products purchased and to make them available to authorized agents within one hour of request.

In its principal brief to this court, Kareem makes no mention of the Twin Cities products. In its response brief, DOR urges us to affirm the judgment of forfeiture for these products. Kareem then addresses these products for the first time in its reply brief, arguing that the judgment of forfeiture for the products must be reversed because the district court failed to make findings of fact or conclusions of law related to the products.

Issues that were not addressed in an appellant's principal brief generally cannot be raised in a reply brief. *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 887 (Minn.

9

2010). Here, Kareem does not mention the Twin Cities products in its principal brief. Kareem therefore has forfeited any argument that the Twin Cities products were not properly declared contraband.

But even if Kareem's challenge regarding these products were not forfeited, it would fail on the merits. In its findings of fact, the district court referenced section 297F.21, subdivision 1(j), regarding the requirement of invoices and found that DOR officers reviewed invoices and noted that invoices from Twin Cities Distribution were dated a year before the manufacture date of the products in inventory. Although the district court made no specific conclusions of law on these products, it did list the statutory basis for the seizure, determining that products meeting this definition may be seized, and issued a judgment of forfeiture for all seized items—which included the Twin Cities products. And because the district court's other conclusions of law did not apply to these products, the only possible ground for forfeiture of these products was the lack of invoices. *See* Minn. Stat. § 297F.21, subd. 1(j). Kareem's challenge therefore fails.

## II. Kareem's excessive-fine and procedural-due-process arguments fail.

Kareem also argues that forfeiture of the tobacco products from Red Wing I-Mart constituted an excessive fine under the Eighth Amendment and that the seizure and forfeiture violated Kareem's procedural-due-process rights under the Fourteenth Amendment. Again, Kareem's arguments are unavailing.

### A. Kareem's constitutional claims are not properly before us.

As an initial matter, Kareem's constitutional arguments are not properly before us. An appellate court generally may consider only those issues that were presented to and

considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Kareem asserts that its Eighth Amendment excessive-fine argument was raised in the district court in "Plaintiff's Complaint, at the district court hearing and in post-hearing submissions." But the complaint makes no mention of an excessive-fine issue. There is only one potentially relevant statement from the district court hearing, where Kareem's counsel asserted, "[T]he forfeiture of that amount of product where taxes have been paid on it would be *very excessive punishment*." (Emphasis added.) And only one sentence in Kareem's supplemental submission to the district court arguably applies: "Moreover, the forfeiture of the tobacco products would impose an *unjust and disproportionate penalty* considering that there was full compliance with Minnesota tax laws." (Emphasis added.) But neither of these statements explicitly mentions or analyzes the Eighth Amendment or its excessive-fine language. Moreover, the district court made no reference to the issue in its order.

As for the procedural-due-process issue, Kareem asserts that it raised this issue in its reply submission to the district court. That brief contains only one reference to due process:

> [Kareem] also contends that once it provided the Granite City Jobbing invoices showing that all taxes had been paid, any purported basis for forfeiture is no longer applicable and forfeiture *infringes on principles of due process*.

(Emphasis added.) Merely invoking the words "due process" is insufficient to warrant review of a procedural-due-process claim in this court. Moreover, the district court did not address the issue in its order. Kareem contends, though, that issues arising from undisputed

11

facts and involving fundamental constitutional protections may be considered for the first time on appeal. But Kareem cites no authority to support this rule, and Minnesota caselaw holds that even constitutional issues cannot be raised for the first time on appeal. *See In re Welfare of C.L.L.*, 310 N.W.2d 555, 557 (Minn. 1981).

### B. Kareem's constitutional challenges fail on the merits.

Even if Kareem's constitutional arguments were properly before us, however, they would not succeed. Constitutional issues are questions of law, reviewed de novo. *Schroeder v. Simon*, 985 N.W.2d 529, 536 (Minn. 2023).

#### 1. Excessive Fine Under the Eighth Amendment

Kareem argues that the forfeiture of the tobacco products from Red Wing I-Mart violated the Eighth Amendment's prohibition against excessive fines. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Whether a forfeiture is subject to the Excessive Fines Clause depends on whether the forfeiture is at all punitive. *Austin v. United States*, 509 U.S. 602, 610 (1993). Minnesota courts have not addressed whether forfeiture of contraband under chapter 297F is punitive. As DOR notes, the U.S. Supreme Court has held the forfeiture of other contraband to be remedial, rather than punitive, for double-jeopardy purposes. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 364 (1984) (concluding that forfeiture of firearms did not constitute punishment in violation of double-jeopardy following acquittal of dealing firearms without license). DOR contends that the forfeiture here was purely remedial because the forfeited items were contraband under chapter 297F and the forfeiture simply "served to separate [Red Wing I-Mart] from

12

items it was not authorized to possess." Thus, DOR argues, the forfeiture is not governed by the Excessive Fines Clause.

But we need not decide whether forfeiture of contraband under chapter 297F is at all punitive if Kareem's Eighth Amendment challenge fails in any event. If a forfeiture is punitive, we then must determine whether it was "excessive." *Wilson v. Comm'r of Revenue*, 656 N.W.2d 547, 554 (Minn. 2003). For this inquiry, Minnesota courts use the "gross disproportionality test." *Id.* at 555 (applying standard from *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). That test considers three factors:

> (1) comparison of the gravity of the offense with the harshness of the penalty; (2) comparison of the contested fine with fines imposed for the commission of other offenses in the same jurisdiction; and (3) comparison of the contested fine with fines imposed for the commission of the same offense in other jurisdictions.

*Id.* (applying three-part test articulated in *Solem v. Helm*, 463 U.S. 277, 290-92 (1983)). Evaluating these factors, we conclude that the forfeiture was not grossly disproportionate here.

First, the seizure here was commensurate with the offense—only illegally possessed products were seized. Second, the value of the product seized—which Kareem claims was approximately $14,000 and which DOR claims had a wholesale value of $3,915—is not large compared to other fines or seizures imposed in Minnesota. *See, e.g.*, *Wendell v. Comm'r of Revenue*, 7 N.W.3d 405, 410 (Minn. 2024) (concluding fine of $13,223 for filing frivolous tax return not grossly disproportionate to other fines); *Jensen v. 1985 Ferrari*, 949 N.W.2d 729, 741 (Minn. App. 2020) (concluding forfeiture of $75,000 Ferrari

13

following appellant's third driving-while-impaired offense in ten years not grossly disproportionate). Third, other states use similar tobacco-forfeiture schemes. *See, e.g.*, Wis. Stat. § 134.66 (2025); Iowa Code § 453A.32 (2025); S.D. Codified Laws § 10-50-66 (2025). Considering all these factors, even if forfeiture here was punitive, it was not grossly disproportionate and thus did not constitute an excessive fine.

### 2. Procedural Due Process

Kareem argues that the seizure and forfeiture violated procedural due process because Kareem lacked notice of the statute's applicability and did not receive a meaningful opportunity to be heard. Whether procedural due process rights have been violated is a question of law reviewed de novo. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). In evaluating a procedural-due-process claim, courts first "identify whether the government has deprived the individual of a protected life, liberty, or property interest" and, if so, determine next whether the procedures used were constitutionally adequate. *Id.* "The procedures afforded by the government must provide an individual with notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quotation omitted).

Assuming without deciding that Kareem had a property interest in the seized property pending the forfeiture proceedings and in the ultimately forfeited property, we see no violation of procedural due process here. Kareem argues that it did not "receive[] fair warning that the internal inventory transfers between commonly managed, licensed retail locations would trigger contraband classification or forfeiture." But parties are presumed to "know the law or, at least, to have acquainted themselves with those laws that are likely

14

to affect their usual activities." *Underwood v. State*, 25 N.W.3d 26, 34 (Minn. 2025) (quotation omitted). And, as we held above, under the plain meaning of the relevant statutes, even commonly managed retail stores cannot transfer product between them without a distributor or subjobber license.

Moreover, Kareem received notice and opportunity to be heard regarding the DOR's determination that the tobacco products were contraband. When the DOR officers seized the products, they explained the law, reviewed the seizure process, asked if the employee had any questions, and left contact information. A notice of seized contraband was sent to the store two days later, cataloguing the items seized and explaining the judicial-review process. *See* Minn. Stat. § 297F.21, subd. 3. The district court held a forfeiture-determination hearing and received supplemental briefing from the parties. Thus, even if Kareem had a protected property interest in the seized contraband, the procedure it received was sufficient to satisfy due process.

**Affirmed.**